CHARLES A. BONNER, ESQ. SB# 85413
A. CABRAL BONNER, ESQ. SB# 247528
**LAW OFFICES OF BONNER & BONNER**
475 GATE FIVE RD, SUITE 211
SAUSALITO, CA 94965
TEL: (415) 331-3070
FAX: (415) 331-2738
cbonner799@aol.com
cabral@bonnerlaw.com

ATTORNEYS FOR PLAINTIFF
ATTORNEY PAUL GARRISON

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## UNLIMITED JURISDICTION

| | |
|---|---|
| PAUL GARRISON<br>          Plaintiffs,<br><br>     vs.<br><br>ALPHABET, INC., GOOGLE LLC, OUTTEN & GOLDEN LLP, WAYNE N. OUTTEN, ANNE GOLDEN, JUSTIN SWARTZ, MELISSA WASHINGTON, BRIAN LEE JOHNSRUD, CURLEY, HURTGEN & JOHNSRUD LLP, CIERRA GROSS and DOES 1-50, inclusive,<br><br>          Defendants. | Case No.: 3:22-cv-01426<br><br>AMENDED COMPLAINT FOR DAMAGES<br><br>1. INTENTIONAL MISREPRESENTATION<br>2. FRAUD<br>3. BREACH OF CONSTRUCTIVE TRUST<br>4. INTENTIONAL INTERFERENCE OF PROSPECTIVE ECONOMIC INTEREST<br>5. VIOLATION OF CALIFORNIA WIRE TAPPING LAW<br>6. BREACH OF GOOD FAITH AND FAIR DEALING<br>7. NEGLIGENCE<br>8. NEGLIGENCE PER SE<br>9. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS<br>10. COMMON COUNT: MONEY HAD AND RECEIVED<br>11. CONVERSION<br>12. BREACH OF FIDUCIARY DUTY<br>13. COMMON COUNT: ACCOUNT STATED |

14. BREACH OF DUTY OF ESCROW HOLDER
15. CONSTRUCTIVE FRAUD: SECTION 1573
16. INVASION OF PRIVACY: WIRETAPPING
17. NEGLIGENT MISREPRESENTATION
18. NEGLIGENT INTERFERENCE OF PROSPECTIVE ECONOMIC INTEREST
19. VIOLATION OF BUSINESS & PROFESSIONS CODE SECTION 17200
20. PRIVATE ATTORNEY GENERAL FEES 17204 and CCP SECTION 1021.5
21. CONSPIRACY
22. INJUNCTION

**JURY TRIAL DEMANDED**

## INTRODUCTION

1.     This Complaint arises out of Defendants' conspiracy to violate a constructive trust consisting of Plaintiff Attorney Paul Garrison's ("Plaintiff" & "Attorney Garrison") earned attorney's fees in the amount of $166.666.67, representing one third (1/3) of $500,000.00 which Mr. Garrison negotiated on May 6, 2021, for his then client, Defendant Cierra Gross when in settlement negotiations with Gross' employer, Defendant, Google LLC ("Google"). On May 6, 2021, Attorney Garrison informed Defendant Gross of her employer's offer of $500,000 settlement offer which Defendant Gross had indicated she would accept. Attorney Garrison presented Defendant Gross with Google's drafted "Settlement and Release." Rather than executing the Settlement and Release, Defendant Gross falsely represented to Attorney Garrison that she was "stressed" and was going on a "Stress Leave."

2.     The very next day, May 7, 2021, rather than going on "Stress" leave, Defendant Gross directly contacted Defendant Google's HR Department and attempted to negotiate a settlement, demanding $850,000, without any notice or agreement from her attorney, Mr. Garrison.

3.     On May 8, 2021, Defendant Gross agreed to accept the $500.000 offer as a complete settlement of her employment dispute with Google on the condition that Attorney Garrison would agree to reduce his acknowledged contractual fee of 1/3 of $500,00 equaling $166.666.67 to $75,000. Attorney Garrison replied that he declined to reduce his 1/3 contractual fee. In response, Defendant Gross revealed that she had secretly and without consent recorded a conversation with Mr. Garrison wherein Mr. Garrison had allegedly agreed to reduce his fee which Defendant Gross threatened that she would disclose and use her "wire-tapped," conversation against Attorney Garrison.

4.      On May 9, 2021, Defendant Gross discharged Attorney Garrison. On that same day, May 9, 2021, Attorney Garrison notified Defendant Google's attorney that Defendant Gross had terminated his services and that he was asserting a lien against her settlement in order to secure his attorney's fees. Less than one month later, Defendant Gross, now represented by Defendants Outten & Golden LLP reached a settlement with Google for $700,000.

5.     Defendant Google disregarded Attorney Garrison's duly noticed and asserted lien, and agreed with Defendants Outten & Golden LLP, Wayne N. Outten, Anne Golden, Justin Swartz, and Melissa Washington ("Outten & Golden") to transfer the agreed upon 1/3 fee amount of $166.666.67 lien amount to Defendants Otten & Golden, LLP. Such action was contrary to Google's obligation under the lien which obligated Google to retain in trust the stated lien amount of $166.666.67. Instead, as an overt act of the conspiracy between them, Defendants, and each of them, drafted a sham "Agreement" that designated Outten & Golden LLP to "hold" Attorney Garrisons' fees of $166.666.67. Defendant Outten & Golden LLP then turned around and induced Attorney Garrison to sign the agreement along with agreeing to waive and release all of his claims against each of the Defendants.

6.     However, the Agreement's "Waiver and Release" provision was devoid of any legal consideration in the same manner as the Sahara Desert is devoid of water. None of the Defendants

tendered or offered any valuable consideration to Attorney Garrison in exchange for his agreement to waive and release claims against Defendants. Rather Defendants induced Attorney Garrison to sign their "agreement" to "hold" his attorney's fees under the representation that in exchange for his signature, they would forthrightly release his funds. Instead, Defendants have wrongfully, illegally, and unethically refused to release Attorney Garrison's fees by asserting he is not entitled to 'one red cent' of fees.  They have not done so even to this date, released a penny to Attorney Garrison almost one year later.

## JURISDICTION AND VENUE

7.      This Court has Jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332(a)(1) as the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States. Attorney Garrison also brings this action pursuant to the laws of the State of California. Venue is proper in this judicial district because Plaintiff's injuries, damages and harm occurred here pursuant to 28 U.S.C. § 1391(b)(2). Further, one or more of the Defendants conduct business in this judicial district.

## PARTIES

8.      PLAINTIFF PAUL GARRISON is a resident of Alameda County and a citizen of the United States.

9.      ALPHABET, INC. is incorporated in the state of Delaware. Alphabet Inc is primarily in the business of providing services of computer programming, data processing. The address of the Corporation's registered office in the State of Delaware is 2711 Centerville Road, Suite 400, City of Wilmington, County of New Castle, Delaware 19808. ALPHABET INC. is the controlling company of Google LLC.

10.     Google LLC ("Google") is incorporated in the state of Delaware. Google's primary business is providing services of computer programming, data processing.

11.     Outten & Golden LLP is a law firm headquartered in New York, New York. (DEFENDANTS "Outten & Golden")

12.     Wayne N. Outten is a resident of New York, NY and a citizen of the United States. (DEFENDANTS "Outten & Golden")

13.     Anne Golden is a resident of New York, NY and a citizen of the United States. (DEFENDANTS "Outten & Golden")

14.     Justin Swartz is a resident of New York, NY and a citizen of the United States. (DEFENDANTS "Outten & Golden")

15.     Melissa Washington is a resident of New York, NY and a citizen of the United States. (DEFENDANTS "Outten & Golden")

16.     Defendant Gross is a resident of New York, NY and a citizen of the United States.

17.     Defendant Brian Lee Johnsrud is a resident of San Mateo County, and a citizen of the United States. (DEFENDANTS "Curley, Hurtgen & Johnsrud")

18.     Defendant Curley, Hurtgen & Johnsrud LLP, Counselors at Law, located at 4400 Bohannon Drive, Suite 230, Menlo Park, CA 94025, San Mateo County.

## DOE DEFENDANTS

19.     Defendant Does 1 through 50 inclusive, are sued herein under the provisions of the Code of Civil Procedure § 474 of the State of California, and upon ascertainment said Doe Defendants' true identity, Plaintiff will amend to expressly state their true identity. Plaintiff is informed and believes and therein alleges that each of the Defendants designated herein by a fictitious name is in some way negligent or responsible for the events and happenings herein referred to, which proximately resulted in those injuries and damages to the Plaintiff as herein alleged.

## VICARIOUS RESPONSIBILITY

20.     Each Defendant, at all relevant times, was acting as the agent and co-conspirator of the other, and each endorsed, ratified, encouraged, agreed with, and took overt acts to carry out and accomplish the illegal conduct, activities and schemes alleged herein. All illegal conduct by managing agents was endorsed, ratified, encouraged and agreed to by each Defendant and was foreseeable, and Defendants, and each of them, had prior knowledge of said illegal conduct, rendering Defendants vicariously liable. Defendants are individually liable for the acts and omissions of each other, based on the facts that each Defendant endorsed, ratified, encouraged, conspired and agreed to the illegal conduct as herein alleged.

**CONSPIRACY**

21.     Defendants engaged in a conspiracy by agreeing to hold in "Escrow" Attorney Garrison's attorney's fees, knowing that Google's Attorney had a legal obligation to retain possession of the funds after Attorney Garrison had provided notice of his lien, which Google's Attorney acknowledged. (*Amen v. Merced County Title Co.* (1962) 58 Cal.2d 528, 531–532 (an escrow agent breaches its fiduciary duties if it pays escrow funds to others  . . . rather than meeting its obligation under the escrow agreement). Defendants, and each of them knew that Defendant Gross' successor attorneys, Outten & Golden, created an illegal conflict of interest because they were seeking the same fees that were contractually due to Attorney Garrison who, upon inducement, permitted Outten & Golden to hold in "escrow."

22.     At the time of their inducement, Defendants Outten & Golden, were well apprised of  their own conflict with respect to Plaintiff's attorney's fees, and thus, never intended to discharge their fiduciary duty as escrow holders to Attorney Garrison. Instead, from the very inception, Defendants Outten & Golden intended to keep and convert Attorney Garrison's fees for their own use and to deny that he was owed any fees at all.

23.     Defendants, and each of them, took the overt act of inducing Attorney Garrison to sign a sham "Escrow Agreement" and the associated "Waiver & Release of Claims," provision that stated, "In exchange, Mr. Garrison agrees not to sue Google, its counsel, Ms. Gross, or Outten & Golden LLP with respect to such lien" despite knowing full well there was no bargained for "exchange." In fact, Google's attorney intentionally refused to sign said "Escrow Agreement" on account that the "Agreement" was nonbinding and void on account of the absence of legal consideration.  Given the express conflict between the two attorneys,' Defendant Google should have maintained possession of the funds and/or transferred the funds to a neutral, uninterested third-party as an Escrow holder.

24.     Defendants' conspiracy caused and created injuries, harms and losses, and Defendants' wrongful, wanton and willful misconduct was outrageous and gross, and said Defendants acted with reckless, malicious and conscious disregard for the rights of Plaintiff, entitling Plaintiff to punitive damages as herein set forth.

1

## STATEMENT OF FACTS

2    25.    On March 10, 2021, "The Law Offices of Paul Garrison ("Attorney") and Ms. Cierra Gross

3    ("Client") both voluntarily and knowingly entered into this Attorney-Client Fee Agreement."

4    26.    The pertinent provisions of the Attorney-Client Fee Agreement are as follows:

5         **3. Client Obligations**: Client duties, at all times during this representation, shall be
          to be truthful with Attorney, cooperate with Attorney, **keep Attorney informed,**
6         comply with the terms of this Agreement, pay bills on time, keep Attorney advised
          of change in address, telephone number and Client's whereabouts, provide
7         necessary information and documents and to appear at legal proceedings and
          meetings related to assisting Attorney in fulfilling her obligations under this
8         Agreement.

9
          **4. Deposit:** Client agrees the work Attorney performs on behalf of Client in this
10        matter is on a contingency fee basis. Client acknowledges that the retention deposit
          in the amount of $2,500.00 for Attorney's start up fees and costs is waived.
11        However, should Attorney obtain a settlement or severance package on Client's
          behalf with Client's employer, **Client shall pay Attorney one-third of any lump**
12        **sum payment** that client receives from her employer as stated in paragraph 5
          below. Client shall receive a billing statement at the end of the matter. [Emphasis
13        added]

14
          5. **Legal Fees and Billing Practices**: Client agrees to pay Attorney on a
15        contingency fee basis The initial deposit is waived as stated in paragraph 4. **client**
          **understands and agrees to pay Attorney one-third 1/3) of the monetary**
16        **settlement** (excluding the value of fringe and retirement benefits and promotional
          wage increases). Although the parties agree to a contingency fee arrangement, for
17        Client's knowledge only, Attorney's regular fee rate is $450.00 per hour. [Emphasis
          added]
18

19        8. **Lien: Client grants Attorney a lien on all claims and causes of action that**
20        **are subject of this representation under this Agreement.** The lien will be for any
          services performed by Attorney at the conclusion of services performed. **The lien**
21        **will attach to any recovery Client may obtain whether by arbitration, court**
          **judgment, verdict, settlement or in any other manner.** The effect of such a lien
22        is that Attorney may be able to compel payment of fees and costs from any recovery
          obtained by Attorney by virtue of her efforts on Client's behalf even if Attorney is
23        discharged before the end of the case. Because a lien may affect Client's property
          rights, **Client may consult with an independent lawyer regarding the lien**
24        **before executing this agreement. By initialing this paragraph, Client agrees**
          **that Client has had a reasonable opportunity to consult with an independent**
25        **attorney regardless of whether Client has exercised the right to consult with**
          **such an attorney and that client grants Attorney such a lien.** /CG/(Client initials
26        here) /PG/ initials here) . [Emphasis added] (See Exhibit 1, Attorney-Client Fee
          Agreement).
27

28

GARRISON AMENDED COMPLAINT FOR DAMAGES                    Case No. 3:22-cv-01426

27.     On May 6, 2021, pursuant to protracted settlement negotiations, Google's attorney, Mr. Brian Johnsrud sent Attorney Garrison a "**Transition And Settlement Agreement And General Release Of Claims,**" specifying: "This Transition and Settlement Agreement and General Release of Claims (this "Agreement") is made by and between Cierra Gross ("you") and Google LLC (the "Company"), as follows:…" (See Exhibit 2, Google's Settlement Agreement)

28.     Attorney Garrison negotiated the $500,000 settlement reflected in the Transition and Settlement Agreement. The Settlement Agreement's pertinent provisions as follows:

1.     **Your Transition Period, Bonus, And Benefits**.  Your approved leave of absence expires on May 24, 2021.  If you sign and timely deliver this Agreement the first time (the "first signing"), the Company will provide you with a transition period from May 25, 2021 through and including July 7, 2021, during which you will use your accrued vacation hours ("Transition Period").  During the Transition Period, you will be on vacation and will not report to (or do any) work or have access to the Company's computer network.  Once you sign this Agreement for the first time, you will receive a $50,000 Transition Period Bonus, less applicable deductions, payable within 30 days of your first signing of this agreement.

4.     The Settlement Payment shall be made as follows:

$200,000.00 (Two Hundred Thousand Dollars), subject to applicable deductions and withholdings, by direct deposit payment to the bank account that the Company has on file for you.  The Company will report this payment on an IRS Form W-2 and its state and local equivalents because it is paid in settlement of any wage-related, back pay, or front pay claims you may have (the "W-2 Payment"). $200,000.00 (Two Hundred Thousand Dollars), in an ACH transfer payment to your bank account.  The Company will report this payment on an IRS Form 1099 and its state and local equivalents because it is paid in settlement of any claims for punitive damages, equitable relief, mental or emotional distress, or cost claims you may have (the "1099 Payment"). $50,000.00 (Fifty Thousand Dollars), in an ACH transfer payment to your attorney's (the Law Offices of Paul Garrison's) bank account, reported on an IRS Form 1099 and its state and local equivalents. (See Exhibit 2, Google's Settlement Agreement).

29.     On May 6, 2021, after reviewing and discussing the offer of $500,000, Ms. Gross told Attorney Garrison that she was taking a mental health leave and to suspend all communications with her and the company for one week. She concealed that she was going to negotiated herself with the company directly without Mr. Garrison's knowledge while he was representing her:

On May 6, 2021, at 8:49 AM, Cierra Gross < > wrote:

Hi Paul,

Just wanted to touch base before I go out. I'm out for a week starting tomorrow to reduce stress. Whatever offer they come back with today, I decline. Continue to negotiate in my absence and get as close to the 1.2 million that you expressed you thought was reasonable.  If you continue at the same pace by the time I return you all should have passed 5 or so offers back and forth. I'm about to enter into a meeting with "Ray Ray and them" so I'm unavailable today. I will not be responding to texts, calls, or emails while I'm out. I will reach out to you next Wednesday upon my return. I look forward to discussing the progress made in my absence.

Thanks so much!

Cierra  (See Ex 23)

30.     The very next day, May 7, 2021, following Defendant Gross' communication of her intent to accept the negotiated offer to Attorney Garrison, Defendant Gross directly emailed Defendant Google's Human Resources and attempted to negotiate a settlement in the amount of $850,000 without providing any notice to Attorney Garrison, and in violation of the terms of the Attorney-Client Fee Agreement which expressly provided: "Client duties, at all times during this representation, shall be to be truthful with Attorney, cooperate with Attorney, keep Attorney informed, comply with the terms of this Agreement". See Exhibit 1, pg. 3 Attorney-Client Fee Agreement.

From: **Cierra Gross**
Date: Fri, May 7, 2021 at 6:49 P
Subject: For Your Awaren
To: Fiona Cicconi
Hi Fiona,

     "We are now at a point where one of my lawyers is instructing me to release a medium article post and file a lawsuit against Google. I do not want to and I hate that my choices suffer more or let Google devalue the impact this has had on my life. **I am asking Google for $850,000 to allow myself some time off to focus on my health and healing** before returning to the workplace and to replace the money from my Google Stock Units had I been able to keep working at Google, if not for racism. "(See Exhibit 3, Defendant Gross' email to HR requesting $850,000).

31.     On May 8, 2021, Defendant Gross indicated that she would agree to the Google offer and asked Attorney Garrison, "are you going to add another addendum to reflect the changes of accepting the fees as paid by Google and waiving the difference? See Exhibit 4, Defendant Gross Email on May 8, 2021, at 2:57 PM, Cierra Gross:

32.     Defendant Gross' conduct of both contacting Google HR and negotiating a settlement without notice or consent from Attorney Garrison and conditioning her acceptance of the offer on Attorney Garrison waving the difference in his fees, prevented him from pursuing additional offers from her employer. Defendant Gross' bad faith conduct created and fixed the contracted entitlement of 1/3 of the $500.000 Attorney Garrison had negotiated and would have received but for the bad faith violation of the terms of the Attorney-Client Fee Agreement.

See Exhibit 1, pg. 3 Attorney-Client Fee Agreement.

33.      Defendants, and each of them, at all relevant times, knew of Defendant Gross' bad faith conduct and acquiesced, consented and ratified said conduct. Hence, Defendants, and each of them, are liable for all the damages, harms, and injuries Attorney Garrison has suffered and will suffer. "It is elementary a plaintiff suing for breach of contract must prove it has performed all conditions on its part or that it was excused from performance. Similarly, where defendant's duty to perform under the contract is conditioned on the happening of some event, the plaintiff must prove the event transpired." *Consolidated World Investments, Inc., v. Lido Preferred Ltd.* (1992) 9 Cal.App.4th 373, 380. Defendant Gross' conduct prevented Attorney Garrison from negotiating additional settlement offers, and Defendant Gross's bad faith was a breach of her duty of good faith and fair dealing as established by the terms of the Attorney-Client Fee Agreement.

34.     On May 8, 2021, at 2:57 PM, Cierra Gross wrote: "Hi. I believe I already signed it but are you going to add another addendum to reflect the changes of you accepting the fees as paid by Google and waving the difference? -Cierra"

35.     On May 09, 2021, 2:47 PM, Defendant Gross continued to indicate she would accept Google's offer of $500,000 conditioned on Attorney Garrison agreeing to reduce his fee from 1/3 to $75,000. "When Google offered to pay your legal fees you said to me on the phone that you would accept Google's payment as payment in full and waive any other fees as a, "gift to me." Is it my understanding that you now have no plans on following through with that verbal agreement and as a result would want a third of any settlement offer agreed upon? -Cierra" (See Exhibit 5)

On May 9, 2021, at 2:27 PM, in response to Defendant Gross' request that Attorney Garrison reduce his fees, Attorney Garrison stated that he declined to reduce his fee and reasserted his contractual fee of one-third (1/3) of the $500,000:

> "Cierra: We have entered into a legally binding agreement as to how I will be compensated for my services with respect to representing you. Since you have rejected Google's settlement offer, there is nothing more for me to consider or change at this time with respect to the Retention Agreement. We should wait to see how the Company responds to your recent demand of $850,000. "

(See Exhibit 6)

36.    On May 9, 2021, at 3:33 PM, Defendant Gross wrote: "Paul I reread your email. It is my understanding that you have no intention of honoring your verbal agreement to me that you would accept Google's payment to you as payment in full in lieu of our signed agreement. Despite the fact that I agreed to the retainer addendum you wanted to add to the contract.  Please confirm my understanding that you are refusing to honor our verbal agreement. Our legally binding agreement also says I can discharge you at any time. If my understanding is correct then you are invoking that clause of the contract because ***I will not sign any offer from Google without the updated addendum.***" (See Exhibit 7) [Emphasis added]

37.    On May 9, 2021, Defendant Gross discharged Attorney Garrison expressing that she would not accept Attorney Garrison's negotiated offer of $500,000 without Attorney Garrison's agreement to reduce his fee to $75,000 and that such reduction must be designated in the "updated addendum": "On 05/09/2021 4:24 PM Cierra Gross < > wrote: Paul, I understand. Effective immediately I discharge you as my lawyer. I will send my new attorneys all relevant contact information. Take care. -Cierra" (See Exhibit 8)

38.    On May 9, 2021, Attorney Garrison acknowledged Defendant Gross' notice of termination and asserted his Lien pursuant to the retainer agreement" "May 9, 2021, at 21:22, Paul Garrison wrote: "Cierra: Thanks for the notice.  In accordance with the Retention Agreement, any **settlement proceeds** that you receive from Google are **subject to the lien provision of the agreement**.  **The effect of the provision permits me to be paid 1/3 of any settlement that you receive from Google in payment for my legal services up to this point.**" (See Exhibit 9) [Emphasis added]

39.   On May 9, 2021, Attorney Garrison duly gave notice to Google's Attorney of his "lien agreement that requires Ms. Gross to pay me 1/3 of any proceeds that she receives from Google.": "May 9, 2021, 6:26 PM **To:** Brian Johnsrud **Subject:** Cierra Gross Brian: Effective immediately, I no longer represent Cierra Gross.  My retention agreement with Ms. Gross is subject to a lien agreement that requires Ms. Gross to pay me 1/3 of any proceeds that she receives from Google.  I will provide you with a copy of the Agreement upon request." **(See Exhibit 10)**

40.   On May 9, 2021, Google's Attorney Brian Johnsrud acknowledged notice of Attorney Garrison's Lien: "From: Brian Johnsrud To: PAUL GARRISON Date: 05/09/2021 6:30 PM Subject: Re: Cierra Gross Hi Paul, Thank you for letting me know.  Who is her new counsel? Brian" (See Exhibit 11)

41.   On May 9, 2021, Defendant Gross acknowledged the Attorney-Client Contract, and pressed her view of an alleged "verbal agreement" that was contrary to the Attorney-Client Agreement's provision that expressly required any modification to be in writing: "11. Entire Agreement: This Agreement shall be the entire agreement between Attorney and client and no other representations, agreement, statements, promises made on or before the effective date of this Agreement shall be binding upon the Parties." See Exhibit 1-Attorney-Client Fee Agreement, pg. 2, prg.11.

42.   On 05/09/2021, 6:50 PM, Cierra Gross wrote: "Paul, No problem. I will ask my attorney to include your $75k in lieu of a third that you verbally agreed to with me in the settlement agreement. Your emails to me in this thread acknowledge there was in fact a verbal agreement that was different than our contract. If you'd like to fight this too I'll have her add it to the list of things to do. Cierra". See Exhibit 12. At no time did Defendant Gross void the Attorney-Client Fee Agreement.

43.   On May 11, 2021, at 12:39 PM, Defendant Gross again acknowledged the validity of the Attorney-Client Fee Agreement and did not exercise any option to void her contractual agreement with Attorney Garrison. Additionally, she admitted to to "wire-tapping" her conversations with Attorney Garrison, as she had done with her employer, Google:

From: Cierra Gross
To: PAULGARRISON

Subject: Authorization to speak with Melissa Washington

Paul,

I am writing to provide you authorization to speak with my prospective counsel Melissa Washington of Outten & Golden who's profile I have linked . My understanding is that Ms. Washington has already reached out to you to address this matter but you advised you could not speak to her because she had not yet been retained. As you know a client may authorize her former attorney to speak with prospective counsel not withstanding a fully executed retainer agreement. Otherwise, your failure to speak with prospective counsel would prejudice my ability to retain new counsel. Without a confirmation of the negotiation history to date as well as the agreed lien on the file I will be prejudiced in my ability to retain counsel to enforce my rights under the law.

In your May 9, 2021 email you stated," If you are making **that** proposal now I will consider it**." I thought it was understood from my email prior that the $75,000 was and still is the proposal on the table. Any other arrangement (other than the $75,000 that you promised and for which Google agreed to pay directly to you) would result in an inequitable outcome where I am receiving less in settlement money than I am paying in attorneys fees**. *Although our conversation was verbal as you are aware of my prior recordings with Google I can substantiate that you did not say that the $75,000 offer was contingent on my acceptance of Google's most recent counter. Unfortunately, I felt the need to start recording our **conversations** after you advised me to have Google add "alleged physical damages" to the settlement agreement where I told you I had not suffered any physical damages*.
In any event I am not seeking to engage in debates around the fees or to exacerbate our existing tensions. I am simply seeking confirmation.  Please confirm that you will agree to a $75,000 lien on the file.

44.    On May 12,2021, Defendant Gross attempted to negotiate a settlement directly with Google's Attorney. "From: **Cierra Gross Sent:** Wednesday, May 12, 2021 2:03 PM **To: Brian Johnsrud** Subject: RE: New representation "Hi Paul indicated that you had new offer that you would send Monday. **Can you send me that new offer**. Thank you." [Emphasis added] (See Exhibit 13)

45.    On May 12, 2021, Google's Attorney, Brian Johnsrud corrected Defendant Gross' mistaken belief that Google had offered additional money as follows: "From: Brian Johnsrud Date: On Wed, May 12, 2021, at 17:12 Hi Cierra, That's not correct.  Google made its last offer to Paul on Thursday, May 6, subject to the attached draft terms and conditions. I told Paul that, if we

received a counteroffer from you, Google would consider a further offer in good faith. So let us wait to receive your good-faith counter before we respond further." (See Exhibit 13)

46.     On May 13, 2021, Defendant Gross again reiterated the false assertion that Attorney Garrison would accept $75,000 but again refrained from designating the Attorney-Client Fee Agreement she had with Attorney Garrison was void: "From: Cierra Gross To: PAUL GARRISON Date: 05/13/2021 11:51 AM Hi Paul, In response to your email to Brian that a counter offer was made and therefore our agreement that you would accept $75k in lieu of the third lapsed, see below. I don't need a response as you will need to discuss who gets what with my new attorney upon settlement, if one is reached." (See Exhibit 14)

47.     Twenty-Seven (27) days after Attorney Garrison negotiated the $500,000 with Google, on 06/09/2021 10:07 AM Brian Johnsrud… wrote: Paul, As you may know, we have a tentative resolution in the Cierra Gross matter, which of course is subject to a written agreement being worked out and signed.  To settle the case, we need your written confirmation that Google may pay 1/3 of the total settlement proceeds as attorney's fees to Cierra's current counsel, **which they agree to hold in their trust account pending resolution of your asserted lien**.  This is a common way to resolve this type of issue so that a client like Cierra is not aggrieved by reason of any dispute over an attorney's fee lien.  In short, it enables Google to sign the written agreement and pay the settlement amount while you and Cierra's new firm work to resolve the lien. Please let me know if you are okay with this.  Many thanks. Brian"

 (See Exhibit 15)

48.     Despite receiving and acknowledging notice of Attorney Garrison's Lien for 1/3 of the negotiated $500,000 settlement amount, on June 11, 2021, Google's Attorney failed to honor Attorney Garrison's Lien. "From: Brian Johnsrud To: PAUL GARRISON Cc: "Swartz, Justin M." "Washington, Melissa" Date: 06/11/2021 8:22 AM Google is NOT handling this lien or holding the amount in a protected account. We are not getting in the middle of this.  Outten & Golden can hold the money in trust. The draft agreement is with them." (See Exhibit 16)

49.     On June 11, 2021, Attorney Garrison informed and instructed Google's Attorney to place "1/3 of the $500,000 into a "protected account until the fee dispute can be resolved. "On June 11, 2021, at 8:18 AM, Attorney Garrison wrote:

> All:
>
> In order to avoid prejudice to Ms. Cierra Gross, I agree to permit Google to place 1/3 of the $500K against which the Law Offices of Paul Garrison holds a lien in that amount for attorney's fees for representing Ms. Gross into a protected account until the fee dispute can be resolved.  All other funds can be distributed consistent with the terms of the agreement between Google and Ms. Gross' counsel. After the fee dispute is resolved, documented in writing and executed by both parties, Google will accordingly disburse the 1/3 amount that was previously withheld.
>
> While this represents a small modification from the original proposal, it is a better one in that it allows a neutral party in the fee dispute, here Google who already possesses the funds, to hold the monies until the fee dispute is resolved.  However, it is in effect the same.
>
> In order to resolve the fee dispute now in the best interest of Ms. Gross, I again invite Ms. Gross' counsel to make a reasonable proposal in writing and I will give it serious consideration although I maintain that LOPG is legally entitled to the full amount stated above.  (See Exhibit 16)

50.     On June 11, 2021, Defendants Outten & Golden acknowledged that Attorney Garrison was "asserting a lien for "1/3rd of the $500,000": From: "Washington, Melissa" To: PAUL GARRISON "Swartz, Justin M." Date: 06/11/2021 5:04 AM:

> Thanks Paul. There is no executed agreement. In order to finalize the agreement, Brian is waiting for your written confirmation that you are seeking a lien for "1/3rd of the $500,000" as you stated during our phone call. He needs written confirmation of that lien to insert into the agreement so that that amount can be held in escrow pending resolution of the lien. During our phone call, you stated that you are asserting a lien for "1/3rd of the $500,000" and are seeking fees "up to the amount that was on the table and nothing additional." Once you confirm that with Brian in writing, he will insert it into the agreement and the parties will finalize and send the final executed agreement to you. (See Exhibit 17)

51.      Defendants, and each of them, attempted to get Attorney Garrison to sign a "Escrow Agreement and release of claims" without legal consideration. Attorney Garrison rejected Defendants' proposed "Escrow agreement as follows:

> **"From:** PAUL GARRISON <
> **Sent:** Monday, June 14, 2021 7:01 PM
> **To:** Washington, Melissa < >; Swartz, Justin M. < >
> **Cc:** Manuel, Ashley <

**Subject:** Fwd: Gross/Google: Escrow agreement and release of claims.pdf

Ms. Washington and Mr. Swartz:

The attached agreement does not comport with our understanding in that it includes a release provision that was never discussed.  I therefore cannot sign the attached agreement in its current iteration.

Please revise in accordance with our agreement.  Thanks. Paul Garrison" (See Exhibit 18)

52.   On the same day, June 14, 2021, again Attorney Garrison reiterated that he "never agreed to release any party" pushing back on Defendants' false assertion:

"**From:** Paul Garrison **Sent:** Monday, June 14, 2021 8:25 PM

**To:** Washington, Melissa

**Cc:** Swartz, Justin M. <; Manuel, Ashley

**Subject:** Re: Gross/Google: Escrow agreement and release of claims.pdf
Melissa:

I never agreed to release any party. I do not agree to release Outten or Ms Gross. Google is the only party where the release is appropriate since it is not a party to the attorney/client agreement or a party's legal representative. Send the revised agreement accordingly. Thanks. Paul Garrison (See Exhibit 19)

53.   On June 14, 2021, Defendants induced Attorney Garrison to sign a sham agreement to hold the attorney's fees but failed to provide any consideration for the sham "Waiver and Release:

Escrow Agreement and Waiver & Release of Claims
Outten & Golden LLP, Ms. Cierra Gross, and Mr. Paul Garrison agree as follows:
1. Whereas, Cierra Gross and Google have reached a final settlement ("Settlement") with respect to her discrimination claims against Google.
2. Whereas, Mr. Garrison has asserted an attorney's fees lien in the amount of $165,000 with respect to the Settlement.
3. Outten & Golden LLP agrees to keep $165,000 in escrow (1/3rd of $500,000) in satisfaction of Mr. Garrison's attorney's fee lien until the fee dispute between the parties is resolved;
4. Mr. Garrison agrees that this amount is adequate to resolve his asserted lien; and,

**5. In exchange, Mr. Garrison agrees not to sue Google, its counsel, Ms. Gross, or Outten & Golden LLP with respect to such lien.** (See Exhibit 20) [Emphasis added]

54.     Paragraph 5 of the "Escrow" is illusory, void of legal consideration and unenforceable. Neither Defendant paid any consideration for the sham provision "not to sue" Defendants. Google never signed the sham "Escrow" agreement.

55.     On August 6, 2021, Defendants Outten asserted that Attorney Garrison "is not entitled to a fee at all." In the following email to Attorney Garrison's, former attorney John Sullivan, Defendants stated in bad faith and in violation of Attorney Garrison's constructive trust for attorney's fees stated:

> **From:** Swartz, Justin M.
> **Sent:** Friday, August 6, 2021 6:44 AM
> **To:** Sullivan, John **Cc:** Jennifer Becker Washington, Melissa >
> **Subject:** Re: Garrison/Gross
>
> John –
>
> Thanks for our call the other day.  I appreciated the approach you took and understand the points you made.  However, **we and our client continue to believe that your client is not entitled to a fee at all,** given the circumstances and his conduct.  Therefore, we reject your client's $140,000 demand.  In response, we will increase our offer to $33,000.  This is more than he would be awarded in litigation and without paying a lawyer to litigate for him.  We urge him to accept it. Please feel free to call me if you want to discuss further. Best regards, Justin" (See Exhibit 21) [Emphasis added]

56.     Attorney Garrison has exhausted all efforts to retrieve his funds from Defendants and Defendants, and each of them, have refused to deliver his contractually authorized and mandatory lien executed attorneys' fees in violation of each of the Causes of Actions set forth herein.

57.     On September 7, 2021, Attorney Garrison appealed to Partner Defendant Wayne Outten, stating, in relevant parts:

> **From:** PAUL GARRISON <
>
> **Sent:** Tuesday, September 7, 2021 2:46 PM
> **To:** Outten, Wayne
> **Cc:** ; Swartz, Justin M. ; Washington, Melissa >
> **Subject:** RE: Cierra Gross Fee Dispute - CONFIDENTIAL FOR THE PURPOSES OF SETTLEMENT ONLY
>
> Mr. Outten:

I am writing to appeal to you for assistance. I am a solo practitioner based in Oakland, CA. My practice is devoted to ADR services and to assisting individuals in fighting employment discrimination by negotiating settlements pre-trial. I often fight big employers and obtain satisfactory results for my clients that are reasonable for both parties.

 Recently, I did just that with respect to an African American female, Cierra Gross, regarding her concerns of racial harassment with her former employer, Google. On the eve of settlement with a hefty offer pre-trial on the table, Ms. Gross terminated me and hired your firm. Your firm lawyers, Justin Swartz and Melissa Washington subsequently represented her. While they improved Ms. Gross' position, they did so by less than half of the amount ($200,000) that I had negotiated ($500,000) for her pre-litigation.

It is my understanding and belief that Ms. Gross has already been paid and the remaining amount represents attorney's fees, approximately $170,000, is being held by your firm in a client trust fund account. Despite my appeals to settle this dispute multiple times, Mr. Swartz and Ms. Washington have tried multiple times to bully me to accept a nominal amount that was not only substantially less than what I was entitled to receive in the written attorney-client contingency fee agreement with Ms. Gross, but also well below the amount that both Ms. Washington and Ms. Gross attempted to get me to accept: $70,000.00. In order to try to settle the matter in good faith, I reduced my attorney's fee entitlement that I earned to $140,000.00. Outten has only tendered a pittance of $33,000.00 in response after initially proposing that I settle the fee dispute for $70,000.00 - still well below what I have earned. Subsequently, Mr. Swartz and Ms. Washington have been completely silent and that is why I am reaching out to you now.

 Not only am I entitled to the attorneys' fees that I earned, but I also want to settle the fee dispute because we are ostensibly on the same side of the law - helping employees and not fighting each other. I believe that the actions of your attorneys belie the key values of your firm - integrity. From your firm's website and its reputation, I have concluded that your firm's mission and practice is not based upon taking earned attorney's fees from solo practitioners. Accordingly, I would like to resolve this matter amicably soon. I am hoping that your intervention will help us achieve this objective. See Exhibit 22

58. Defendants have ignored and continue to ignore, all appeals to pay the attorney's fees due and owning Attorney Garrison. Attorney Garrison performed all terms and conditions of the Attorney-Client Agreement and was prevented from finalizing the settlement on account of Defendants' insupportable bad faith conduct.

WHEREFORE, Plaintiff prays for relief as set forth herein

**FIRST CAUSE OF ACTION**
**Against All Defendants**
**INTENTIONAL MISREPRESENTATION**

59.     Attorney Garrison incorporates by reference the prior paragraphs of this complaint as though set forth in full.

60.     Defendants, and each of them, made false representations that they would rightfully ad lawfully hold in escrow Attorney Garrison's attorney's fees despite concealing their true intention to refute Attorney Garrison's entitlement to any and all fees. Defendants, and each of them, represented to Attorney Garrison the truth of the following statement that "Outten & Golden LLP agrees to keep $165,000 (sic) in escrow (1/3rd of $500,000) in satisfaction of Mr. Garrison's attorney's fee lien until the fee dispute between the parties is resolved." Defendants' representation was false and in knowing that the representation was false when they made it, did so recklessly and with patent disregard for its truth. Defendants fully intended that Attorney Garrison would rely on their representation. Attorney Garrison reasonably relied on Defendants' representation on account that Defendants, Outten & Golden LLP, Wayne N. Outten, Anne Golden, Justin Swartz, Melissa Washington, Does 1-150 were attorneys who, in declaring that they would hold Attorney Garrison's funds in 'Escrow," established a "fiduciary relationship of trust. Defendants concealed their true intention of donning the conflicting roles of "escrow holder," "advocate" and ultimate final arbiter with respect to the handling of Attorney Garrison's attorney's fees. Had Attorney Garrison been apprised of Defendants' true intentions, he would have insisted on a neutral third party as the escrow holder of his attorney's fees.  Attorney Garrison was harmed; and Attorney Garrison's reliance on Defendants' representation was a substantial factor in causing his harm.

61.     Defendants, at all relevant times herein, are therefore liable to Plaintiff for all economic and non-economic damages, including all pain, mental and emotional distress, loss of enjoyment of life, anxiety, fear, and misery.

WHEREFORE, Plaintiff prays for relief as set forth herein.

**SECOND CAUSE OF ACTION**
*Against All Defendants*
**FRAUD: NO INTENTION TO PERFORM PROMISE**

62.     Plaintiff Attorney Garrison incorporates by reference the prior paragraphs of this complaint as though set forth in full.

63.     Attorney Garrison was harmed on account of Defendants engagement in affirming false promises. Based upon the above circumstances, Defendants had no intention of performing their affirmative promises when articulated. Despite such, Defendants intended that Attorney Garrison rely on their promises which in fact he did. Likewise, Defendants refused to perform the substance of their promised acts and as such, Attorney Garrison's reliance on Defendants' said promises was the substantial factor in causing his harms.

64.     Defendants, at all relevant times herein, are therefore liable to Plaintiff for all economic and non-economic damages, including all pain, mental and emotional distress, loss of enjoyment of life, anxiety, fear, and misery.

      WHEREFORE, Plaintiff prays for relief as set forth herein.

**THIRD CAUSE OF ACTION**
*Against All Defendants*
**BREACH OF CONSTRUCTIVE TRUST**

65.     Plaintiff Attorney Garrison incorporates by reference the prior paragraphs of this complaint as though set forth in full.

66.     Defendants received Attorney Garrison's attorney's fees in trust, pursuant to an "Escrow" account that was voluntarily represented and created by Defendants. The Escrow is a "trust" account. An escrow holder is a fiduciary of the funds in escrow until they are disbursed to the person entitled to the funds. The funds do not belong to the escrow holder.

67.     Defendants' Outten & Golden LLP, Wayne N. Outten, Anne Golden, Justin Swartz, Melissa Washington, Does 1-150 are asserting an interest in Attorney Garrison's fees and are disbursing their attorney's fees from said escrow funds in express violation of their fiduciary duty. Defendants manufactured a conflict of interest by offering to hold Attorney Garrison's attorney's fees in escrow while intentionally concealing their own self-interests in his fees.

68.     Defendants, at all relevant times herein, owed a fiduciary duty to Plaintiff. Defendants breached their fiduciary duty to Attorney Garrison and are therefore liable to him for all economic and non-economic damages, including all pain, mental and emotional distress, loss of enjoyment of life, anxiety, fear, and misery.

WHEREFORE, Plaintiff prays for relief as set forth herein.

**FOURTH CAUSE OF ACTION**
**Against All Defendants**
**INTENTIONAL INTERFERENCE OF PROSPECTIVE ECONOMIC INTEREST**

69.     Plaintiff Attorney Garrison incorporates by reference the prior paragraphs of this complaint as though set forth in full.

70.     Defendants intentionally interfered with an economic relationship between Attorney Garrison and Defendant Gross that would have resulted in an economic benefit to Attorney Garrison.

71.     Attorney Garrison and Defendant Gross were engaged in an economic relationship the fruits of which resulted in an economic benefit to Attorney Garrison. Defendants were well apprised of Attorney Garrison and Defendant client Gross. Defendants engaged in wrongful conduct by inducing Attorney Garrison to sign an "Escrow Agreement" in which Defendants agreed to hold Attorney Garrison's attorney fees when their true intent was to convert the fees to their own benefit.

72.     By engaging in this conduct, Defendants intended to disrupt the relationship and/ or knew that disruption of the relationship was certain or substantially certain to occur. The relationship was disrupted. Attorney Garrison was harmed. Defendants' conduct was a substantial factor in causing Attorney Garrison's harm.

73.     Defendants, at all relevant times herein, are therefore liable to him for all economic and non-economic damages, including all pain, mental and emotional distress, loss of enjoyment of life, anxiety, fear, and misery.

WHEREFORE, Plaintiff prays for relief as set forth herein.

### FIFTH CAUSE OF ACTION
### Against Defendant CIERA GROSS
### VIOLATION OF CALIFORNIA WIRETAPPING LAW

74.     Plaintiff Attorney Garrison incorporates by reference the prior paragraphs of this complaint as though set forth in full.

75.     **CALIFORNIA PENAL CODE SECTION 631 provides the following:**

(a) Any person who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section, is punishable by a fine not exceeding two thousand five hundred dollars ($2,500), or by imprisonment in the county jail not exceeding one year, or by imprisonment pursuant to subdivision (h) of Section 1170, or by both a fine and imprisonment in the county jail or pursuant to subdivision (h) of Section 1170. If the person has previously been convicted of a violation of this section or Section 632, 632.5, 632.6, 632.7, or 636, he or she is punishable by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment in the county jail not exceeding one year, or by imprisonment pursuant to subdivision (h) of Section 1170, or by both that fine and imprisonment.

76.     Wiretapping is considered a "wobbler" offense that can be filed by prosecutors as either a felony or a misdemeanor. If charged as a misdemeanor, the defendant can be sentenced to up to a year in jail and a fine of up to $2,500. If charged as a felony, the maximum penalty one could receive is three years in prison. If the defendant has a previous conviction for wiretapping, eavesdropping, intercepting a cell phone call or intercepting a cordless phone call, the fine amount rises to $10,000.

77.     In addition to criminal penalties, the victim of a criminal wiretapping case is entitled to civil damages as a result of the defendant's conduct. The victim of such action is statutorily entitled to up to three times the amount of damages suffered or $5,000, whichever amount is greater. Even if no damages were suffered, the victim could still sue the defendant for up to $5,000.

Defendant Gross' admission that she was recording her "conversations" with Attorney Garrison without his consent is an admission of several wiretapping violations, entitling

Attorney Garrison to $5,000 for each illegal secret recording. Upon information and belief there were in excess of five such unconsented illegal recordings while the number might be significantly more. From: Cierra Gross To: PAUL GARRISON Date: 05/11/2021 12:39 PM
Subject: Authorization to speak with Melissa Washington

Paul,
In your May 9, 2021 email you stated," If you are making that proposal now I will consider it." I thought it was understood from my email prior that the $75,000 was and still is the proposal on the table. Any other arrangement (other than the $75,000 that you promised and for which Google agreed to pay directly to you) would result in an inequitable outcome where I am receiving less in settlement money than I am paying in attorneys fees. Although our conversation was verbal as you are aware of my prior recordings with Google I can substantiate that you did not say that the $75,000 offer was contingent on my acceptance of Google's most recent counter. ***Unfortunately, I felt the need to start recording our conversations*** after you advised me to have Google add "alleged physical damages" to the settlement agreement where I told you I had not suffered any physical damages. [Emphasis added]
In any event I am not seeking to engage in debates around the fees or to exacerbate our existing tensions. I am simply seeking confirmation. ***Please confirm that you will agree to a $75,000 lien on the file.*** [Emphasis added]

78. Defendant Gross, at all relevant times herein, owed a legal statutory duty to Plaintiff as set forth in the wiretapping statute. Defendant Gross breached said duty and is therefore liable to Plaintiff for all economic and non-economic damages, including all pain, mental and emotional distress, loss of enjoyment of life, anxiety, fear, and misery.

79. Defendant Gross acted with malice, oppression and fraud, entitling Attorney Garrison to punitive damages in an amount as herein stated.

WHEREFORE, Plaintiff prays for relief as set forth herein.

**SIXTH CAUSE OF ACTION**
**Against All Defendants**
**BREACH OF CONTRACTUAL COVENANT OF**
**GOOD FAITH AND FAIR DEALING**

80. Plaintiff Attorney Garrison incorporates by reference the prior paragraphs of this complaint as though set forth in full.

81. In every contract or agreement there is an implied promise of good faith and fair dealing. This implied promise means that each party will not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract. Good faith means honesty of purpose without any intention to mislead or to take unfair advantage of another. Generally speaking, it

means being faithful to one's duty or obligation. However, the implied promise of good faith and fair dealing cannot create obligations that are inconsistent with the terms of the contract.

82.    **BUSINESS AND PROFESSIONS CODE SECTION** 6147 provides, in relevant parts:

" (a) An attorney who contracts to represent a client on a contingency fee basis shall, at the time the contract is entered into, provide a duplicate copy of the contract, signed by both the attorney and the client, or the client's guardian or representative, to the plaintiff, or to the client's guardian or representative. The contract shall be in writing and shall include, but is not limited to, all of the following:

(1) A statement of the contingency fee rate that the client and attorney have agreed upon.

(2) A statement as to how disbursements and costs incurred in connection with the prosecution or settlement of the claim will affect the contingency fee and the client's recovery.

(3) A statement as to what extent, if any, the client could be required to pay any compensation to the attorney for related matters that arise out of their relationship not covered by their contingency fee contract. This may include any amounts collected for the plaintiff by the attorney.

(4) Unless the claim is subject to the provisions of Section 6146, a statement that the fee is not set by law but is negotiable between attorney and client.

**(b) Failure to comply with any provision of this section renders the agreement voidable at the option of the plaintiff, and the attorney shall thereupon be entitled to collect a reasonable fee**.

83.    Defendant Gross did not at any time communicate to Attorney Garrison her intent to void the Attorney-Client Agreement she had entered into with Attorney Garrison. Before Defendant Gross terminated Attorney Garrison's services on May 9, 2021, she unilaterally, secretly and in bad faith, contacted Google and negotiated a settlement for $850,000 in a concerted attempt to deprive Attorney Garrison of his contracted fee on the prior negotiated $500,000 settlement he had negotiated and brokered on Defendant Gross' behalf with her employer, Google. Defendant Gross' unbridled greed obscured her good faith which continued unabated with her attempt to "squeeze play" Attorney Garrison by forcing him to accept a fee reduction as grounds for consummating the settlement she arranged with Google behind Attorney Garrison's back.

84.    Given that pursuant to statute, an attorney-client fee agreement is not set by law but is negotiable between attorney and client…and that "failure to comply with any provision of this section renders the agreement voidable at the option of the plaintiff, and the attorney shall

thereupon be entitled to collect a reasonable fee, Defendant Gross was fully endowed with the prerogative to void her Agreement with Attorney Garrison.

85.     The client's power to discharge an attorney, with or without cause, is absolute. Code Civ. Proc., § 284. *Fracasse v. Brent* , 6 Cal.3d 784. "The relation of attorney and client is one of special confidence and trust, and the dignity and integrity of the legal profession demand that the interests of the client be fully protected." California law implies in every contract "Good Faith" to all parties of a contract, here, client and the attorney. Defendant Gross engaged in bad faith with she contacted Google HR and negotiated a $850,000 settlement while representing to Attorney Garrison that she was going on a "stress leave."

86.     Defendant Gross again engaged in bad faith, and continues to engage in bad faith, when she attempted to bully Attorney Garrison by telling him that he must reduce his fee on the $500,000 settlement he negotiated, threatening that she had recorded their conversations and could prove he had agreed to reduce his fee to $75,000 instead of the contractual 1/3 of the $500,000, or $166,666.67. When Attorney Garrison insisted on his one third contractual fee of the $500,000 settlement, Defendant Gross terminated his services as an attorney. The law does not reward fraud, bad faith and unclean hand, all of which are accurately reflected  by the facts of Defendant Gross' actions.

87.     An attorney's action for reasonable compensation accrues only when the contingency stated in the original agreement has occurred -- i.e., the client has had a recovery by settlement or judgment. *Fracasse v. Brent* , 6 Cal.3d 784. Less than one month following Defendant Gross' retaliatory termination of  Attorney Garrison on account of his insistence that he receive the fee amount that he contractually agreed upon with Defendant Gross. After Attorney Garrison's retaliatory termination, Defendant Gross retained co-Defendants, Outten & Golden, who have in the same fashion as their client, engaged in conduct constituting unclean hands, fraud, and bad faith by intentionally and unlawfully retaining Attorney Garrisons' rightfully contracted for attorney's fees.

88.     Defendants, and each of them, violated the duty to act fairly and in good faith. Attorney Garrison and Defendants entered into a contract. Attorney Garrison complied with the entirety of

the terms of his contract. All the prerequisite conditions for Defendants to perform their terms had been completed.  In preventing Attorney Garrison from receiving the benefits of his contractual bargain, Defendants acted in a manner contrary to their 'fair and in good faith' requirements. fairly and in good faith. With respect to Defendants Outten & Golden, these Defendants breached their fiduciary duty to Attorney Garrison who, on account of their breach,  has been and continues to be harmed by Defendants' conduct.

89.     Defendants, at all relevant times herein, owed a duty to Plaintiff. Defendants breached the duty owing to Plaintiff and are therefore liable to Plaintiff for all economic and non-economic damages, including all pain, mental and emotional distress, loss of enjoyment of life, anxiety, fear, and misery.

WHEREFORE, Plaintiff prays for relief as set forth herein.

### SEVENTH CAUSE OF ACTION
### Against All Defendants
### NEGLIGENCE

90.     Plaintiff Attorney Garrison incorporates by reference the prior paragraphs of this complaint as though set forth in full.

91.     As argued above, Defendants, and each of them, owed a duty to care to Attorney Garrison and on account of their conduct constituting bad faith and fair dealing, breached that duty and continued to do so by refusing to deliver Attorney Garrison's legally contracted and rightfully earned attorney's fees. Defendants' negligence is a substantial factor in causing Attorney Garrison's harm.

92.     Defendants, at all relevant times herein are therefore liable to Plaintiff for all economic and non-economic damages, including all pain, mental and emotional distress, loss of enjoyment of life, anxiety, fear, and misery.

WHEREFORE, Plaintiff prays for relief as set forth herein.

### EIGHTH CAUSE OF ACTION
### Against Defendant Gross
### PRESUMPTION NEGLIGENCE PER SE

93.     Plaintiff Attorney Garrison incorporates by reference the prior paragraphs of this complaint as though set forth in full.

94.     **CALIFORNIA PENAL CODE SECTION 631** provides in pertinent parts the following:

    (a)    Any person who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section, is punishable by a fine.

95.     Defendant Gross violated this law and her violation was a substantial factor in bringing about harm to Attorney Garrison. Defendant Gross' violation was intentional, malicious, fraudulent and perpetrated to extort fees from Attorney Garrison. Defendant Gross violation of this law was a substantial factor in bringing about the harm to Attorney Garrison.

96.     Defendant, at all relevant times herein, is therefore liable to Plaintiff for all economic and non-economic damages, including all pain, mental and emotional distress, loss of enjoyment of life, anxiety, fear, and misery.

    WHEREFORE, Plaintiff prays for relief as set forth herein.

**NINTH CAUSE OF ACTION**
**Against All Defendants**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

97.     Plaintiff Attorney Garrison incorporates by reference the prior paragraphs of this complaint as though set forth in full.

98.     On account of Defendants extreme and outrageous conduct, Defendants' intended, and or acted with reckless disregard of the probability that Attorney Garrison would suffer emotional distress. Attorney Garrison indeed suffered severe emotional distress which was a substantial factor in causing Attorney Garrison's severe emotional distress.

99.     Defendants, at all relevant times herein are therefore liable to Plaintiff for all economic and non-economic damages, including all pain, mental and emotional distress, loss of enjoyment of life, anxiety, fear, and misery.

        WHEREFORE, Plaintiff prays for relief as set forth herein.

### TENTH CAUSE OF ACTION
### Against All Defendants
### Common Count: Money Had and Received

100.    Plaintiff Attorney Garrison incorporates by reference the prior paragraphs of this complaint as though set forth in full.

101.    Despite receiving money that was intended for the benefit of Attorney Garrison, Defendants have intentionally and recklessly withheld said monies from disbursement to Attorney Garrison.

102.    Defendants, at all relevant times herein, are therefore liable to Plaintiff for all economic and non-economic damages, including all pain, mental and emotional distress, loss of enjoyment of life, anxiety, fear, and misery.

        WHEREFORE, Plaintiff prays for relief as set forth herein.

### ELEVENTH CAUSE OF ACTION
### Against All Defendants
### Conversion

103.    Plaintiff Attorney Garrison incorporates by reference the prior paragraphs of this complaint as though set forth in full.

104.    Defendants wrongfully exercised control over Attorney Garrison's attorney's fees which otherwise constitute his personal property. As such, Attorney Garrison is endowed with a right to possess his money. On account of the conduct attested to herein, Defendants substantially interfered with Attorney Garrison's property by knowingly or intentionally preventing Attorney Garrison from gaining access to his fee monies despite repeated demands for its disbursement.. Attorney Garrison did not consent to Defendants' refusal to disburse his contracted for attorney's fees that they held in their possession. Defendants' egregious conduct has been and continues to be a substantial factor in causing Attorney Garrison's harm.

105.    Defendants, at all relevant times herein, are therefore liable to Plaintiff for all economic and non-economic damages, including all pain, mental and emotional distress, loss of enjoyment of life, anxiety, fear, and misery.

WHEREFORE, Plaintiff prays for relief as set forth herein.

**TWELFTH CAUSE OF ACTION**
**Against All Defendants**
**BREACH OF FIDUCIARY DUTY**

106.    Plaintiff Attorney Garrison incorporates by reference the prior paragraphs of this complaint as though set forth in full.

107.    Defendants agreed to hold the Attorney Garrison's funds in trust by placing such in escrow. A fiduciary relationship is "any relation existing between parties to a transaction wherein one of the parties is in duty bound to act with the utmost good faith for the benefit of the other party. Such a relation ordinarily arises where a confidence is reposed by one person in the integrity of another, and in such a relation the party in whom the confidence is reposed, if he voluntarily accepts or assumes to accept the confidence, can take no advantage from his acts relating to the interest of the other party without the latter's knowledge or consent. . .' *Wolf v. Superior Court* (2003) 107 Cal.App.4th 25, 29. Traditional examples of fiduciary relationships in the commercial context include trustee/beneficiary, directors and majority shareholders of a corporation, business partners, joint adventurers, and agent/principal." *Wolf, supra,* 107 Cal.App.4th at p. 30.

108.    "In order to plead a cause of action for breach of fiduciary duty against a trustee, the plaintiff must show the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach; the absence of any one of these elements is fatal to the cause of action. The beneficiary of the trust has the initial burden of proving the existence of a fiduciary duty and the trustee's failure to perform it; the burden then shifts to the trustee to justify its actions." *LaMonte v. Sanwa Bank California* (1996) 45 Cal.App.4th 509, 517.

109.    Defendants created a Fiduciary Relationship when DEFENDANTS voluntarily induced Attorney Garrison to sign an escrow Agreement and agreed to hold the Attorney Garrison's funds in trust, in escrow and breached such, by refusing to relinquish monies upon the completion of conditions that required escrow in the first instance.  Defendants, at all relevant times herein, owed

a fiduciary duty to Plaintiffs. Defendants breached their fiduciary duty owing to Plaintiff and are therefore liable to Plaintiff for all economic and non-economic damages, including all pain, mental and emotional distress, loss of enjoyment of life, anxiety, fear, and misery.

110.   Defendants' conduct in breaching this special fiduciary duty of trust was intentional, malicious, fraudulent, entitling Attorney Garrison to punitive damages.

WHEREFORE, Plaintiff prays for relief as set forth herein.

### THIRTEENTH CAUSE OF ACTION
### Against All Defendants
### Common Count: Account Stated

111.   Plaintiff Attorney Garrison incorporates by reference the prior paragraphs of this complaint as though set forth in full.

112.   An account stated is an agreement between the parties, based on prior transactions between them establishing a debtor-creditor relationship, that a particular amount is due and owing from the debtor to the creditor. The agreement may be oral, in writing, or implied from the parties' words and conduct.

113.   Defendants owe Attorney Garrison attorney's fees as monies on an account. Defendants signed an Escrow Agreement to hold Attorney Garrison's money. Defendants agreed with the amount of monies due and owing as asserted by Attorney Garrison based upon his contracted with his client, Defendant Gross. Defendants, by words, conduct, and contract promised to pay the stated amount to Attorney Garrison. Defendants have not paid Attorney Garrison any of the amount owed under this account. The amount of money Defendants owe Attorney Garrison is $166,666.67.

114.   Defendants, at all relevant times herein, are therefore liable to Plaintiff for all economic and non-economic damages, including all pain, mental and emotional distress, loss of enjoyment of life, anxiety, fear, and misery.

115.   Defendants' conduct in breaching this Special Fiduciary Duty of trust was intentional, malicious, fraudulent, entitling Attorney Garrison to punitive damages.

WHEREFORE, Plaintiff prays for relief as set forth herein

## FOURTEENTH CAUSE OF ACTION
### Against All Defendants
### BREACH OF DUTIES OF ESCROW HOLDER

116.    Plaintiff Attorney Garrison incorporates by reference the prior paragraphs of this complaint as though set forth in full.

117.    Defendants Outten & Golden LLP, Wayne N. Outten, Anne Golden, Justin Swartz, Melissa Washington, Does 1-150 volunteered to be Escrow holders. Escrow holders have a fiduciary duty to the parties in escrow. "An escrow holder has a fiduciary duty to the escrow parties to comply strictly with the parties' instructions. The holder only assumes this duty by agreeing to execute the escrow. The obligation to exercise reasonable skill and diligence in carrying out the escrow instructions, and to comply strictly with the depositor's written instructions are within the duties undertaken in the contract." Kangarlou v. Progressive Title Co., Inc. (2005) 128 Cal.App.4th 1174, 1179.

118.    Defendants, at all relevant times herein, owed a Fiduciary duty to Plaintiff. Defendants failed to exercise reasonable skill and diligence in carrying out the escrow instructions providing: "Outten & Golden LLP agrees to keep $165,000 in escrow (I/3rd of $500,000) in satisfaction of Mr. Garrison's attorney's fee lien until the fee dispute between the parties is resolved."

119.    Instead, Defendants, and each of them, have prevented the resolution of the fee dispute by asserting that Attorney Garrison is not entitled to any attorney's fees. Escrow holders by definition cannot serve as advocates against the interests of the escrow party whose interest they are charged to protect on account of their custodianship of the escrow. i.e., "Escrow holders have a fiduciary duty to the parties in escrow".

120.    Defendants breached the fiduciary duty owing to Plaintiff and are therefore liable to Plaintiff for all economic and non-economic damages, including all pain, mental and emotional distress, loss of enjoyment of life, anxiety, fear, and misery.

121.    Defendants' conduct in breaching this Special Fiduciary Duty of trust was intentional, malicious, fraudulent, entitling Attorney Garrison to punitive damages.

WHEREFORE, Plaintiff prays for relief as set forth herein

**FIFTEENTH CAUSE OF ACTION**
**Against All Defendants**
**Constructive Fraud (Civ. Code, § 1573)**

122.    Plaintiff Attorney Garrison incorporates by reference the prior paragraphs of this complaint as though set forth in full.

123.    California Civil Section1573 states that Constructive fraud consists of:

"1. In any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or anyone claiming under him, by misleading another to his prejudice, or to the prejudice of anyone claiming under him; or, 2. In any such act or omission as the law specially declares to be fraudulent, without respect to actual fraud."

124.    Defendants, and each of them, have committed "constructive fraud" against Attorney Garrison in refusing to deliver his monies, while concealing their true intent at the time Defendants induced Attorney Garrison to sign the "Escrow Agreement," i.e., an intent to withhold his money despite volunteering to to hold such in trust. Thus, Defendant engaged:"(1) a fiduciary or confidential relationship; (2) nondisclosure (breach of fiduciary duty); (3) intent to deceive, and (4) reliance and resulting injury (causation)." *Younan v.Equifax Inc.* (1980) 111 Cal.App.3d 498, 516 fn. 14.

125.    Defendants breached the fiduciary duty owing to Plaintiff and are therefore liable to Plaintiff for all economic and non-economic damages, including all pain, mental and emotional distress, loss of enjoyment of life, anxiety, fear, and misery.

126.    Defendants' conduct in breaching this Special Fiduciary Duty of trust was intentional, malicious, fraudulent, entitling Attorney Garrison to punitive damages.

WHEREFORE, Plaintiff prays for relief as set forth herein

**SIXTEENTH CAUSE OF ACTION**
**Against Defendant CIERA GROSS**
**INVASION OF PRIVACY—VIOLATION OF WIRETAPPING LAW**

127.    Plaintiff Attorney Garrison incorporates by reference the prior paragraphs of this complaint as though set forth in full.

128.    Defendant violated California Wiretapping law, Penal Code section 601 designed to protect a citizen's privacy guaranteed by California Constitution Art 1 Section 1: "All people are by nature

free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."

129.    Defendant Gross admitted: "*Unfortunately, I felt the need to start recording our* **conversations** *after you advised me to have Google add "alleged physical damages" to the settlement agreement where I told you I had not suffered any physical damages*."

130.    California Penal Code 601 provides a person commits a crime and is liable for $5000 for each unauthorized, unconsented to recording:

> (a) Any person who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or who willfully and without the consent of all parties to the communication…."

131.    Defendant Gross is therefore liable to Plaintiff for all economic and non-economic damages, including all pain, mental and emotional distress, loss of enjoyment of life, anxiety, fear, and misery.

WHEREFORE, Plaintiff prays for relief as set forth herein

### SEVENTEENTH CAUSE OF ACTION
### Against All Defendants
### NEGLIGENT MISREPRESENTATION

132.    Plaintiff Attorney Garrison incorporates by reference the prior paragraphs of this complaint as though set forth in full.

133.    Defendants negligently misrepresented to Attorney Garrison that Defendants would hold his attorneys' fees until resolution of the final accounting of said attorney's fees, but represented such when concealing their true intent to keep the entirety of the attorney's fees for themselves. Defendants did not reasonably believe that the representations they made were true. Defendants intended that Attorney Garrison rely on their representations which in fact, Attorney Garrison did rely on them as evidenced by his signing the "Escrow Agreement'. Attorney Garrison's reliance on Defendants' representations was a substantial factor in causing his harm.

134.    Defendants are therefore liable to Plaintiff for all economic and non-economic damages, including all pain, mental and emotional distress, loss of enjoyment of life, anxiety, fear, and misery.

135.    Defendants' conduct in their misrepresentation to Attorney Garrison was intentional, malicious, fraudulent, entitling Attorney Garrison to punitive damages.

WHEREFORE, Plaintiff prays for relief as set forth herein

**EIGHTEENTH CAUSE OF ACTION**
**Against All Defendants**
**NEGLIGENT INTERFERENCE WITH**
**PROSPECTIVE ECONOMIC INTEREST**

136.    Plaintiff Attorney Garrison incorporates by reference the prior paragraphs of this complaint as though set forth in full.

137.    Attorney Garrison and Defendant Gross engaged in an economic relationship that was should have reasonably resulted in a mutually beneficial result. Defendants knew or should have known of this relationship; Defendants knew or should have known that this relationship would be disrupted if Defendants failed to act with reasonable care. Defendants failed to act with reasonable care; Defendants engaged in wrongful conduct by refusing to deliver to Attorney Garrison his attorney's fees after repeated demands.

138.    Defendants' illegal conduct has disrupted and continues to disrupt the resolution of the disbursement of Attorney Garrison's attorneys' fees and as such, Attorney Garrison was harmed substantially based upon Defendants' wrongful conduct.

139.    Defendants are therefore liable to Plaintiff for all economic and non-economic damages, including all pain, mental and emotional distress, loss of enjoyment of life, anxiety, fear, and misery.

140.    Defendants' conduct in breaching this Special Fiduciary Duty of trust was intentional, malicious, fraudulent, entitling Attorney Garrison to punitive damages.

WHEREFORE, Plaintiff prays for relief as set forth herein

## NINETEENTH CAUSE OF ACTION
### Against All Defendants
### Violation of Business & Professions Code Section 17200
### Unfair Competition

141.    Plaintiff Attorney Garrison incorporates by reference the prior paragraphs of this complaint as though set forth in full.

142.    BUSINESS AND PROFESSIONS CODE Section 17200 provides: "Unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code"

143.    Defendants, and each of them, engaged in "unlawful, unfair or fraudulent business act or practice and unfair, deceptive" conduct by failing to deliver to Attorney Garrison his attorney fees or to appoint a neutral escrow holder to resolve the dispute of the attorney's fees. Instead of taking a reasonable course of action, Defendants have required Attorney Garrison to retain attorneys and incur losses, damages and harm, including lost interest on the funds in Defendants' possession.

### PRIVATE ATTORNEY GENERAL ALLEGATIONS
### Against all Defendants

144.    Plaintiff brings these claims as private attorney general pursuant to Business & Professions Code § 17204. This Code provides in pertinent part: "Actions for relief pursuant to this chapter shall be prosecuted …by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." Plaintiff seeks to enjoin Defendants from engaging in the unfair and fraudulent business practices alleged, and to require Defendants to make restitution of all monies wrongfully obtained through their unfair and fraudulent business practices. A private attorney general/representative action is necessary and appropriate because Defendants have engaged in the wrongful acts alleged as a general business practice.

145.    Attorney Garrison will be entitled to Attorney fees pursuant to Code of Civil Procedure Section 1021.5., providing: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest." Fraud and deception by attorneys is a matter of public concern and public interest as the facts in this case plainly demonstrate.

146.    Defendants are therefore liable to Plaintiff for all economic and non-economic damages, including all pain, mental and emotional distress, loss of enjoyment of life, anxiety, fear, and misery.

147.    Defendants' conduct in breaching this Special Fiduciary Duty of trust was intentional, malicious, fraudulent, entitling Attorney Garrison to punitive damages.

WHEREFORE, Plaintiff prays for relief as set forth herein.

## PUNITIVE DAMAGES

148.    Plaintiff Attorney Garrison hereby incorporates herein by this reference all the preceding paragraphs of this complaint as though those allegations are set forth here in full.

149.    Defendants' acts, as alleged herein, as to all causes of action, were intentional, outrageous, despicable, oppressive, fraudulent, and done with ill will and intent to injure Attorney Garrison and to cause him mental anguish, anxiety, and distress. Defendants' acts were done in conscious disregard of the risk of severe emotional harm to Attorney Garrison and with the intent to injure, constituting oppression, fraud, and malice under California Civil Code §3294, entitling Attorney Garrison to punitive damages.

## PRAYER FOR RELIEF

Plaintiff respectfully prays for relief as follows:

1.   For a money judgment for emotional distress, pain, suffering and other general damages according to proof with pre-judgment and post-judgment interest thereon;

2.   For a money judgment representing compensatory special and economic damages together with interest on these amounts-- according to proof with the prejudgment interest thereon, including, but not limited, out of pocket expenses, other incidental and consequential expenses; wage losses; damage to personal property; all according to proof at trial;

3.   For attorneys' fees pursuant to CCP 1021.5 and all legal and statutory basis, and all costs of suit incurred herein; and

4. For Punitive damages in the amount of $3,000,000 against each DEFENDANT to protect the safety of society.

5. For an order mandating Defendants deliver the total sum of Attorney Garrisons fees with pre-judgment and post judgment interest at the rate of 10% per annum.

6. All other and further relief as the court deems just and proper.

Dated: March 14, 2022                      RESPECTFULLY SUBMITTED,

                                           LAW OFFICES OF BONNER & BONNER

                                           */s/Charles A. Bonner*
                                           Charles A. Bonner
                                           Attorney for Plaintiff