# EXHIBIT 1

## Attorney-Client Fee Agreement

The Law Offices of Paul Garrison ("Attorney") and Ms. Cierra Gross ("Client") both voluntarily and knowingly enter into this Attorney-Client Fee Agreement.   Client agrees that Attorney will provide the following legal services below.

1. **Conditions**:  Client agrees that Attorney will not start performing legal services on her behalf unless and until the Client signs and returns this Agreement and pays the retention fee specified in paragraph 4.  In this case, Attorney will not charge Client on a contingent basis.

2. **Scope of Services**:  Attorney will provide legal services as follows: 1) LEGAL CONSULTATION; 2) REVIEW EMPLOYMENT DOCUMENTS; 3) PROVIDE LEGAL ANALYSIS; 4) NEGOTIATE SETTLEMENT TERMS WITH HER FORMER EMPLOYER; AND 5) PREPARE AND/OR REVIEW SETTLEMENT AGREEMENT.  Attorney will provide legal services reasonably required to represent Client.  Attorney will keep Client informed and to respond to all questions, inquiries or concerns related to this case.  Client recognizes that the philosophy of Attorney's law firm is dispute resolution and not litigation.  If Client wishes to litigate, Attorney and Client will discuss the situation before an action is filed.  Under no circumstances is Attorney obligated to file a lawsuit on Client's behalf.  Attorney may make referrals upon request by Client.

3. **Client Obligations:**  Client duties, at all times during this representation, shall be to be truthful with Attorney, cooperate with Attorney, keep Attorney informed, comply with the terms of this Agreement, pay bills on time, keep Attorney advised of change in address, telephone number and Client's whereabouts, provide necessary information and documents and to appear at legal proceedings and meetings related to assisting Attorney in fulfilling her obligations under this Agreement.

4. **Deposit**:  Client agrees the work Attorney performs on behalf of Client in this matter is on a contingency fee basis.  Client acknowledges that the retention deposit in the amount of $2,500.00 for Attorney's start up fees and costs is waived.  However, should Attorney obtain a settlement or severance package on Client's behalf with Client's employer, Client shall pay Attorney one-third of any lump sum payment that Client receives from her employer as stated in paragraph 5 below.  Client shall receive a billing statement at the end of the matter.

5. **Legal Fees and Billing Practices**:  Client agrees to pay Attorney on a contingency fee basis.  The initial deposit is waived as stated in paragraph 4.  Client understands and agrees to pay Attorney one-third (1/3) of the monetary settlement (excluding the value of fringe and retirement benefits and promotional wage increases).  Although the parties agree to a contingency fee arrangement, for Client's knowledge only, Attorney's regular fee rate is **$450.00** per hour.

1

6. **Costs and Charges:** Client recognizes that Attorney will incur costs and expenses. For example, such costs and expenses include, but are not limited to, service of process charges, filing fees, court reporter and deposition fees, jury fees, notary, telephone, postage, mileage, transportation, hotel and meals, investigation expenses, consultant fees, expert fees, professional, mediator, arbitrator, and Special Master fees. Attorney will not be responsible for such costs and expenses which shall be the sole responsibility of Client.

7. **Billing Statements**: Attorney will provide Client with a billing statements at the end of the matter whether or not a settlement is obtained for Client.

8. **Lien**: Client grants Attorney a lien on all claims and causes of action that are subject of this representation under this Agreement. The lien will be for any services performed by Attorney at the conclusion of services performed. The lien will attach to any recovery Client may obtain whether by arbitration, court judgment, verdict, settlement or in any other manner. The effect of such a lien is that Attorney may be able to compel payment of fees and costs from any recovery obtained by Attorney by virtue of her efforts on Client's behalf even if Attorney is discharged before the end of the case. Because a lien may affect Client's property rights, Client may consult with an independent lawyer regarding the lien before executing this agreement. By initialing this paragraph, Client agrees that Client has had a reasonable opportunity to consult with an independent attorney regardless of whether Client has exercised the right to consult with such an attorney and that Client grants Attorney such a lien.  _____ (Client initials here) _____ (Attorney initials here)

9. **Discharge and Withdrawal**: Client may discharge Attorney at any time. Attorney may withdraw with Client's consent or for good cause. Good cause includes Client's breach of this Agreement, refusal to cooperate or to follow Attorney's direction or advice on a material matter or any fact or circumstance that would render Attorney's representation in this matter unethical or unlawful. When Attorney's services conclude, all outstanding charges are immediately due and payable. After services have been concluded, Attorney will, upon Client's request, deliver Client's files and possessions to Client unless it is subject to the lien provision in this Agreement, whether or not Client has paid for all services.

10. **Disclaimers**: Nothing in this Agreement shall be construed as a promise or guarantee about an outcome in Client's case. Attorney makes no promises or guarantees. Attorney's comments about the outcome of the case are opinions only. Similarly, Attorney's statements about fees and costs are estimates only and may vary from actual fees and costs.

11. **Entire Agreement**: This Agreement shall be the entire agreement between Attorney and Client and no other representations, agreement, statements, promises made on or before the effective date of this Agreement shall be binding upon the Parties.

12. **Severability**: If any provision or portion of this Agreement shall be determined to be legally void and unenforceable by a court or arbitrator of competent jurisdiction, the remaining provisions of this Agreement shall remain valid and enforceable.

13. **Modification by Subsequent Agreement**: The Parties may modify or revise this Agreement after execution of this Agreement only in writing signed and dated by both Parties.

14. **Effective Date**: This Agreement shall commence on the date both Parties have executed this Agreement, even if the legal services are not performed immediately. Client agrees to pay Attorney for the reasonable value of all services performed on Client's behalf irrespective of effective date of this Agreement or whether this Agreement is made effective by the Parties' signatures.

The Parties have read and understand the above provisions and their rights and obligations under this Agreement as of the date that Attorney first started providing legal services on Client's behalf. If more than one Client signs this Agreement, all shall be jointly and severally liable for the duties, responsibilities and obligations under this Agreement.

REDACTED

_____     Date: ___03/10/2021___, 20___

Cierra Gross, Client

Address:

REDACTED
_____

Street

REDACTED

City, State & Zip Code

Telephone Number:

( 336 ) REDACTED

Law Offices of Paul Garrison
REDACTED
By: _____     Date: ___5/8___, 20 21

3

**Cierra Gross** REDACTED                            3/11/2021 1:01 PM

# Re: Addendum to the Retention Agreement

To PAUL GARRISON <REDACTED        >

Hi Paul,

I agree to the terms of the addendum below.

Can you send me the link to your PayPal. Or is it the same email address you're using now?

-Cierra
Please excuse any brevity

On Mar 11, 2021, at 15:53, PAUL GARRISON REDACTED        wrote:

Cierra:

This is the Addendum to the Retention Agreement:

Ms. Cierra Gross and Paul E. Garrison entered into a Retention Agreement for legal services on March 10, 2021. The Agreement erroneously stated that the deposit fee of $2,500.00 is waived which did not reflect the Parties' verbal agreement. This Addendum modifies the Retention Agreement to require that Ms. Gross shall pay the retention deposit fee which conforms to the Parties' intent. Moreover, the Parties have agreed that Ms. Gross shall demonstrate her written consent by replying to this email, "I agree with the terms of the Addendum below."

Paul Garrison
Law Offices of Paul Garrison
               REDACTED

Oakland, CA 94612
(510) REDACTED

# EXHIBIT 2

**TRANSITION AND SETTLEMENT AGREEMENT AND**
**GENERAL RELEASE OF CLAIMS**

This Transition and Settlement Agreement and General Release of Claims (this "Agreement") is made by and between Cierra Gross ("you") and Google LLC (the "Company"), as **follows**:

1.      **Your Transition Period, Bonus, And Benefits**.  Your approved leave of absence expires on May 24, 2021.  If you sign and timely deliver this Agreement the first time (the "first signing"), the Company will provide you with a transition period from May 25, 2021 through and including July 7, 2021, during which you will use your accrued vacation hours ("Transition Period").  During the Transition Period, you will be on vacation and will not report to (or do any) work or have access to the Company's computer network.  Once you sign this Agreement for the first time, you will receive a $50,000 Transition Period Bonus, less applicable deductions, payable within 30 days of your first signing of this Agreement.  You may characterize your departure from the Company as voluntary and communicate the same to your team and peers.  Since you will remain employed during the Transition Period, you agree that you will not work for a competitor until after your Separation Date (defined below).  During the Transition Period, you will remain eligible for all benefits, including health care, vision and dental benefits, you received prior to the Transition Period, as provided in the normal manner and subject to required deductions per Company policy.  During the Transition Period, any pre-existing equity awards, including GSUs, will vest on the schedule specified in the applicable award and plan.  While it is anticipated that you will remain employed through the Transition Period, you may be terminated for cause during the Transition Period if you violate Company policy or otherwise engage in misconduct during the Transition Period.  If you are terminated for cause during the Transition Period, you will not be eligible to sign this Agreement for a second time.

2.      **Transition Period Release**.  In consideration of the Transition Period Bonus and Benefits specified in Paragraph 1 above associated with the first signing of this Agreement, which you acknowledge would not otherwise be due to you and constitute consideration of value, you, on your own behalf, and on behalf of your respective heirs, family members, executors, and assigns, hereby unconditionally and irrevocably release the Company and its current and former officers, directors, employees, investors, members, managers, shareholders, administrators, affiliates, agents, divisions, representatives, subsidiaries, predecessor and successor corporations, and assigns (the "Released Parties"), from, and agree not to sue concerning, any claim, duty, obligation or cause of action relating to any matters of any kind, whether presently known or unknown, suspected or unsuspected, that you may possess arising from any omissions, acts or facts that have occurred up until and including the date you execute this Agreement the first time (the "Released Claims"), as further defined and detailed in Paragraph 9 below.  For the sake of clarity, this Transition Period Release includes a release of all claims in connection with the agreed-upon mutual separation of your employment, as defined in Paragraph 3.  You acknowledge that this Agreement is a negotiated settlement and is voluntary, deliberate, and informed, provides you with consideration of value, and that you have received notice and an opportunity to retain an attorney.

3.      **Employment Separation**.  Your employment with the Company will end at the expiration of the Transition Period on July 7, 2021 ("Separation Date").  The Company will pay you any and all salary, wages, bonuses, commissions, and accrued vacation, earned as of that date, separate and apart from the Settlement Payment.

4.      **Settlement Payment**.  Subject to you signing this Agreement for the second time (the "second signing") and returning to the Company's counsel (1) a copy of the signed Agreement; (2) a completed Form W-9 for yourself and a completed Form W-9 for your attorney (the Law Offices of Paul Garrison); (3) ACH

transfer information for your bank account and ACH transfer information for your attorney's bank account (the Law Offices of Paul Garrison); and (4) all of the Company's property, as set forth below, the Company shall pay to you the sum of $450,000.00 (Four Hundred Fifty Thousand Dollars),  an amount to which you are not otherwise entitled (the "Settlement Payment").   Payment of the Settlement Payment is contingent on the Effective Date of the Second Signing (as defined below) occurring within the time frame provided below in this Agreement.  The Settlement Payment will not be taken into account in determining your rights or benefits under any other program.  The Settlement Payment shall be made as follows:

> $200,000.00 (Two Hundred Thousand Dollars), subject to applicable deductions and withholdings, by direct deposit payment to the bank account that the Company has on file for you.  The Company will report this payment on an IRS Form W-2 and its state and local equivalents because it is paid in settlement of any wage-related, back pay, or front pay claims you may have (the "W-2 Payment").

> $200,000.00 (Two Hundred Thousand Dollars), in an ACH transfer payment to your bank account.  The Company will report this payment on an IRS Form 1099 and its state and local equivalents because it is paid in settlement of any claims for punitive damages, equitable relief, mental or emotional distress, or cost claims you may have (the "1099 Payment").

> $50,000.00 (Fifty Thousand Dollars), in an ACH transfer payment to your attorney's (the Law Offices of Paul Garrison's) bank account, reported on an IRS Form 1099 and its state and local equivalents.

The Company will direct deposit the W-2 Payment to your bank account and ACH transfer payments to you and your attorney's (the Law Offices of Paul Garrison's) bank accounts within sixty (60) days following the date of your delivery, via facsimile or otherwise, to the Company's counsel of this signed Agreement for the second signing, the completed Form W-9s for yourself and your attorney (the Law Offices of Paul Garrison), and ACH transfer bank account information for yourself and your attorney (the Law Offices of Paul Garrison).

In the event that a tax authority should challenge this characterization and seek to hold the Company liable for taxes, interest, or penalties on account of the Company's not taking payroll tax withholding and deductions from any of the 1099 Payment, you will hold the Company harmless from and indemnify the Company for any such liability.

5. **Continuation of Benefits**.  Your benefits will cease on the Separation Date, unless expressly continued or converted in accordance with the applicable benefit plans (go/benefitdocuments).  For example, if you are covered by the Company's group health plan (e.g., medical, dental and/or vision), such coverage will end on the last day of the calendar month in which your Separation Date occurs; however, you will receive a COBRA election package shortly after your Separation Date.  If a timely election and full payment are made by you, COBRA may extend your group health coverage beyond the Separation Date.

6. **Submission and Reimbursement of Gcard Charges**.  If you have a Company Credit Card, you must return your Company Credit Card and submit your expenses on or before May 24, 2021. Per the Company Credit Card Terms and Conditions, the Company Credit Card is for business expenses, not personal expenses.  You understand and agree that you have a legal obligation to reimburse the Company for any personal expenses charged to your Company Credit Card account and that payment of such reimbursement is a condition precedent to receiving the Settlement Payment outlined above in this Agreement.  You agree to provide the Company with reimbursement for any and all personal expenses charged to your Company Credit Card within fifteen (15) days of the Separation Date.

2

7.     **Vesting of Stock**.  The final equity award vesting date for any equity awards, including stock option, GSU or other equity-related grants made to you during your employment with the Company and in accordance with its applicable equity award plan and equity award agreement shall be the Separation Date.

8.     **Confidential Information**.   You shall continue to maintain the confidentiality of all confidential and proprietary information of the Company and shall continue to comply with the terms and conditions of the confidential information, invention assignment agreement between you and the Company (the "Confidentiality Agreement"), a copy of which will be provided to you upon request.  You shall return all the Company property and confidential and proprietary information in your possession to the Company on or before May 24, 2021.  Pursuant to the Defend Trade Secrets Act of 2016, you will not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that: (a) is made (1) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney, and (2) solely for the purpose of reporting or investigating a suspected violation of law; or (b) is made in a complaint or other document filed in a lawsuit or other proceeding, provided such filing is made under seal.  In the event it is determined that the disclosure of trade secrets of the Company or its subsidiaries or affiliates was not done in good faith pursuant to the above, you will be subject to substantial damages, including punitive damages and attorneys' fees.

9.     **Release of Claims**.  You understand and agree that the Transition Period Bonus and Benefits and Settlement Payment and other benefits provided for herein, except for those to which you are already entitled, are provided to you in consideration for the covenants undertaken and the releases contained in this Agreement. You, on your own behalf, and on behalf of your respective heirs, family members, executors, and assigns, hereby unconditionally and irrevocably release the Company and its current and former officers, directors, employees, investors, members, managers, shareholders, administrators, affiliates, agents, divisions, representatives, subsidiaries, predecessor and successor corporations, and assigns (the "Released Parties"), from, and agree not to sue concerning, any claim, duty, obligation or cause of action relating to any matters of any kind, whether presently known or unknown, suspected or unsuspected, that you may possess arising from any omissions, acts or facts that have occurred up until and including the date you execute this Agreement (the "Released Claims").  The Released Claims include, without limitation: any and all claims arising from or relating to your employment relationship with the Company and the termination of that relationship; any and all claims for wrongful discharge of employment, termination in violation of public policy, constructive discharge, negligent hiring, retention or supervision, quantum meruit, breach of contract, both express and implied, breach of a covenant of good faith and fair dealing, both express and implied, promissory estoppel, negligent or intentional infliction of emotional distress, negligent or intentional misrepresentation, negligent or intentional interference with contract or prospective economic advantage, unfair business practices, defamation, libel, slander, negligence, personal injury, assault, battery, invasion of privacy, false imprisonment, and conversion; any and all claims for wages, bonuses, commissions, overtime, vacation pay, severance pay, or any other form of compensation of any kind; any and all claims for discrimination, harassment, and retaliation; and any and all claims for attorneys' fees and costs.  The Released Claims include, without limitation, any and all claims arising under any federal, state, local or municipal constitution, statute, regulation, ordinance, and common law, including, but not limited to, Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Americans with Disabilities Act of 1990, 42 U.S.C. section 1981, the Employee Retirement Income Security Act of 1974, the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Family and Medical Leave Act, and the Equal Pay Act.

In addition, if you work or worked for the Company in any of the following states, the Released Claims include any and all claims arising under the following state, local or municipal laws, but not limited to:

**California:** California Constitution; California Labor Code, including but not limited to Cal. Lab. Code §§ 200 *et seq.*, 970 *et seq.*, 1198, 2698 *et seq.*; any applicable California Industrial Welfare Commission order; the

California Fair Employment and Housing Act; the San Francisco Minimum Wage Ordinance; the San Francisco Paid Sick Leave Ordinance; the San Francisco Health Care Security Ordinance; the San Francisco Fair Chance Ordinance (NOTE: effective August 13, 2014); the San Francisco Family Friendly Workplace Ordinance.

**New York:** The New York Labor Law; the New York Executive Law; the New York State Human Rights Law; the New York City Human Rights Law.

The Released Claims, however, do not include: claims that may not be waived by private agreement without judicial or governmental supervision; claims for workers' compensation benefits or unemployment insurance benefits; or claims arising under this Agreement; or any rights or claims that cannot be waived as a matter of law.

You understand the provisions of this release and acknowledge your agreement to its terms is knowing and voluntary.

You represent that you are under the age of forty (40) as of the Separation Date.

**You agree that the release set forth above shall be and remain in effect in all respects as a complete general release as to the matters released. You represent and warrant that you have not assigned or given away any of the Released Claims.**

10. **Waiver of Unknown Claims**. Your release of claims is intended to release all Released Claims, even if you are unaware of them, and even if knowledge of the existence of the claims would have materially affected your acceptance of this Agreement. Accordingly, you waive the protection of California Civil Code Section 1542 and any other analogous rule or principle of law. Section 1542 states:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

11. **Pending and Future Claims**. You agree that you will not file any claims arising out of or based upon your employment with the Company. Nothing in the Agreement is intended or shall be construed to prohibit you from filing a charge or participating in any investigation or proceeding conducted by the Equal Employment Opportunity Commission, National Labor Relations Board, or other comparable federal, state, or local agency, although by signing this Agreement you agree to waive your right to recover individual relief based on any claims asserted in such a charge or complaint. However, by signing this Agreement you waive your right to recover individual relief based on any claims asserted in such a charge or complaint with the exception that this Agreement does not limit your right to receive an award for providing information to the Securities and Exchange Commission or the Commodity Futures Trading Commission.

12. **Medicare Entitlement**. If you are *entitled* to Medicare benefits, the government may require you to reimburse Medicare in connection with this settlement to the extent it compensates you for losses covered by Medicare, which you promise to do as required by law. The Company is required by law to report settlements with Medicare-*entitled* individuals to the government. You promise to provide the Company with any and all government-required or requested reporting information in a timely manner, upon request. The Company may delay paying to you the Settlement Payment under this Agreement until you provide the reporting assistance it requests. You hereby represent that (initial one):

_____ You are not entitled to Medicare benefits.

_____ You are entitled to Medicare benefits and your Medicare claim number is

_____.

Note: Under Medicare, being eligible for benefits is not the same as being *entitled* to benefits. The Company is required by law to report information only with respect to settlements made with individuals who are *entitled* to Medicare benefits.  If you violate any promise in this provision, or if any of your representations in it are false, you agree to hold the Company and all Released Parties harmless, and indemnify them, from any resulting Medicare-related liability, reporting penalties, and/or defense costs. You acknowledge that you, and your attorney if you have one, understand the implications of your response, promises and agreements in this provision.

13.     **Confidentiality**.  The provisions of this Agreement (including for the avoidance of doubt, the value of the Transition Period Bonus and Benefits and Settlement Payment) shall be held in strictest confidence by you and shall not be publicized or disclosed in any manner whatsoever, including but not limited to any reference to its meaning, importance, value or comparative value; provided, however, you may disclose this Agreement to your spouse or domestic partner (if any), attorney, accountant, tax preparer, and financial advisor, and you may also disclose this Agreement insofar as such disclosure is required by law or in connection with filing a charge or participating in any investigation or proceeding conducted by the Equal Employment Opportunity Commission, National Labor Relations Board, or comparable federal, state or local agency.  You specifically agree that your obligations to comply with the confidentiality provisions of this paragraph (Confidentiality) are material terms of this Agreement without which the Company would not have entered into this Agreement.  Therefore, you agree that a violation of the terms of this paragraph (Confidentiality) would result in damages to the Company that would be inherently difficult to calculate, and therefore in the event of such disclosure, you will be obligated to pay to the Company 90% of the value of the Settlement Payment as liquidated damages.  Nothing in this paragraph (Confidentiality) shall prejudice the Company's ability to recover damages for the breach of any other provision of this Agreement or the Confidentiality Agreement.

14.     **Protected Activity**.  For purposes of this Agreement, "**Protected Activity**" means filing a charge or complaint, or otherwise disclosing relevant information to or communicating, cooperating, or participating with, any federal, state, local, or other governmental agency, including the Securities and Exchange Commission, the Equal Employment Opportunity Commission, and the National Labor Relations Board but does not include the disclosure of any Company attorney-client privileged communications.  You understand that nothing in this Agreement prohibits you from engaging in any Protected Activity.  You understand that you are not required to obtain prior authorization from the Company or to inform the Company prior to engaging in any Protected Activity.

15.     **Non-Disparagement; No Cooperation**.  Other than in connection with filing a charge or participating in any investigation or proceeding conducted by the Equal Employment Opportunity Commission, the National Labor Relations Board, or other comparable federal, state, or local agency, or under a valid subpoena or court order to do so, you will not make any false, disparaging, negative or derogatory remarks about the Company or Alphabet Inc. ("Alphabet"), their leadership or other senior personnel, their subsidiaries or affiliates, or any of their products, processes, policies, practices, other personnel, standards of business conduct, or areas of research; or counsel or assist any attorneys or their clients in the presentation or prosecution of any disputes, differences, grievances, claims, charges, or complaints by any third party against the Released Parties.  Notwithstanding the foregoing, consistent with applicable law, nothing in this Agreement prevents you from disclosing the facts or circumstances underlying your claim or action for sexual assault, sexual harassment,

5

and/or sex discrimination, the failure to prevent sexual harassment or sex discrimination, or retaliation for reporting sexual harassment or sex discrimination, but which will not include any disclosure of the provisions of this Agreement (including for the avoidance of doubt, the value of the Settlement Payment).  You specifically agree that your obligations to comply with the non-disparagement provisions of this paragraph (Non-Disparagement; No Cooperation) are material terms of this Agreement without which the Company would not have entered into this Agreement.  Therefore, you agree that a violation of the terms of this paragraph (Non-Disparagement; No Cooperation) would result in damages to the Company that would be inherently difficult to calculate, and therefore in the event of such disclosure, you will be obligated to pay to the Company 90% of the value of the Settlement Payment as liquidated damages.

16.     **Employment References**.  All inquiries by potential future employers will be directed to http://www.inverify.net.  Upon inquiry, the Company shall only state the following:  your last position and dates of employment.

17.     **No Admission of Liability**.  Nothing contained herein shall be deemed to constitute an admission or evidence of liability on the part of the Company.

18.     **Severability**.  Should an arbitrator or court of competent jurisdiction determine that any provision of this Agreement is wholly or partially illegal, invalid, or unenforceable, the legality, validity, and enforceability of the remaining parts, terms, or provisions shall not be affected, and the illegal, unenforceable, or invalid part, term, or provision shall be deemed not to be a part of this Agreement.

19.     **Governing Law; Consent to Personal Jurisdiction**.  This Agreement shall be construed according to the laws of the state in which the Company last employed you, New York, without giving effect to any choice of law rules or principles that may result in the application of the laws of any jurisdiction other than that of that state.  You agree that the exclusive venue of any dispute concerning the interpretation or enforcement of this Agreement, or any other related matter, will be the state and federal courts located in the state and county in which the Company last employed you.  You consent to the personal jurisdiction of these courts.

20.     **Miscellaneous**.  This Agreement constitutes the final and exclusive embodiment of the entire agreement between you and the Company with regard to its subject matter.  It is entered into without reliance on any promise or representation, written or oral, other than those expressly contained herein, and it supersedes any other such promises, warranties or representations.  This Agreement may not be modified or amended except in a writing signed by both you and a duly authorized officer of the Company.  The Agreement shall be binding upon you and the Company and the respective heirs, personal representatives, successors and assigns of you and the Company, but neither this Agreement nor any right hereunder shall be assignable by you without the written consent of the Company.  If any provision of this Agreement is held to be invalid, void or unenforceable, the remaining provisions shall remain in full force and effect.

21.     **Counterpart Originals**.  This Agreement may be executed in counterpart originals with each counterpart to be treated the same as a single original.  A facsimile, PDF or other electronic signature of this Agreement shall be valid and have the same force and effect as a manually signed original.

22.     **Effective Date**.  If you accept this Agreement, please sign and date the enclosed copy of this Agreement in the space provided below for the first signing, and return it to Brian L. Johnsrud, Curley, Hurtgen & Johnsrud LLP, bjohnsrud@chjllp.com, by May 14, 2021.  If you accept this Agreement for the second time, please sign and date the enclosed copy of this Agreement in the space provided below for the second signing and return it to Brian L. Johnsrud, b REDACTED m, by July 12, 2021, but no earlier than the Separation

6

Date.  The provisions of the first signing of this Agreement shall be effective once it has been signed by both parties for the first time within the time period described herein (the "Effective Date of First Signing") and the provisions of the second signing of this Agreement shall be effective once it has been signed by both parties for the second time within the time period described herein (the "Effective Date of the Second Signing").

FIRST SIGNING: TRANSITION PERIOD, BONUS, AND BENEFITS AND RELEASE

BY SIGNING BELOW, I VOLUNTARILY ACCEPT THE TERMS AND CONDITIONS OF THE TRANSITION PERIOD, BONUS, AND BENEFITS, INCLUDING ITS RELEASE OF CLAIMS.

GOOGLE LLC

BY: _____          _____
    Michael Pfyl, Director, Legal – Employment                    Cierra Gross

Dated: _____          Dated: _____

SECOND SIGNING: SETTLEMENT PAYMENT AND RELEASE

BY SIGNING BELOW, I VOLUNTARILY ACCEPT THE TERMS AND CONDITIONS OF THE SETTLEMENT PAYMENT, INCLUDING ITS RELEASE OF CLAIMS.

GOOGLE LLC

BY: _____          _____
    Michael Pfyl, Director, Legal – Employment                    Cierra Gross

Dated: _____          Dated: _____

# EXHIBIT 3

From: Brian Johnsrud <REDACTED        >
To  PAUL GARRISON   REDACTED
Date: 05/07/2021 1:31 PM
Subject  Re  For Your Awareness

Hi Paul -

This is the message Cierra sent, see below.

Brian

Sent from my iPhone

On May 7, 2021, at 2:10 PM, Brian Johnsrud <REDACTED        > wrote:

FYI

---------- Forwarded message ---------
From  **Cierra Gross**  REDACTED
Date: Fri, May 7, 2021 at 6:49 PM
Subject  For Your Awareness
To: Fiona Cicconi <REDACTED       >

Hi Fiona,

I just wanted to put a situation on your radar as I am not sure you are aware of it and its potential to become bigger than it is currently. I am a People Consultant that supported Jeff Dean's organization reporting to Erin Finley on a bungee  I have been on mental health leave of absence since February 24, 2021. I am a high performing employee and am well thought of amongst people like Hamidou Dia, Becky Bucich, Robyn Harding, Erin Finley etc

Unfortunately, my time in Cloud HR has not been a very healthy work environment for me. To summarize, Bridgette McInnis-Day called me an angry black woman  I reported the incident to Melonie Parker and was ignored. Months later her direct report Monica Morella did the same thing. I again

reported it to Katie Penca and no investigation was launched. Then my coworker Abby Martin randomly declared she was my manager, essentially demoting me. I then raised all three of these issues again and a formal investigation was launched. In the following promotion cycle I was not promoted even though there was no job ladder or expectations for the role provided.

The investigation took seven months to complete and at the end of it, they said they did not know what to do about the comments made by Bridgette but agreed it was inappropriate and concerning. They also said they would add into the investigation notes that next time HR should investigate claims as they arise but nothing would be done to prevent this from happening again. Relative to the promotion they said that I was not promoted because other minorities on the team were promoted. I provided documented proof of every single claim I made including an email of Monica Morella apologizing for perpetuating a racist trope. I included it below for you to see for yourself.

Due to Google's lackluster response, I had no choice but to retain an attorney to help me leave Google as it became clear that nothing would be done to make the work environment safe for me to be in upon my return from my leave. This is devastating to me as I loved Google and wanted to continue the good work I was doing.

Since then Google has gas lit me, demeaned me, and called me an average employee at best. I take pride in my work and accomplishments as reflected in my Perf reviews. I am deeply hurt that Google would treat its own HR employee this way despite the facts of the situation. It has severely impacted my mental health. I have lost ten pounds, my hair is falling out, I have not gotten more than four consecutive hours of sleep in any given night and my body is now unable to digest food on its own forcing me to take fiber supplements for the unforeseeable future. They have offered me pennies for pain and suffering in an attempt to make this go away quietly, further devaluing the pain and suffering of a black female Googler. It's as if Google learned nothing from the mistreatment of Timnit Gebru.

We are now at a point where one of my lawyers is instructing me to release a medium article post and file a lawsuit against Google. I do not want to and I hate that my choices suffer more or let Google devalue the impact this has had on my life. I am asking Google for $850,000 to allow myself some time off to focus on my health and healing before returning to the workplace and to replace the money from my Google Stock

Units had I been able to keep working at Google, if not for racism

If there is any way you can help this wrap up soon I would appreciate it. I would just like to move on with my life.

Thank you

Cierra


<Screen Shot 2021-05-07 at 1.45.36 PM.png>



**POps Clients** - Need Employment Legal help? Try go/popslegalhelp

**People Consultants** - Please see our additional resource for you at go/pcel on how to troubleshoot frequent issues and seek legal advice

**POps COVID19 Inquiries**   Please check the COVID related POps FAQs


1 Attached Images



EXHIBIT 4

From  Cierra Gross <span style="color:red">REDACTED</span>
To: Paul Garrison <<span style="color:red">REDACTED</span>            >
Date  05/09/2021 2 47 PM
Subject: Re: Representation


Hi Paul

When Google offered to pay your legal fees you said to me on the phone that you
would accept Google's payment as payment in full and waive any other fees as a, "gift
to me "

Is it my understanding that you now have no plans on following through with that
verbal agreement and as a result would want a third of any settlement offer agreed
upon?

 Cierra

This e-mail was sent from my cell phone. Please excuse any brevity.


> On May 9, 2021, at 17:27, Paul Garrison <span style="color:red">REDACTED</span>          >
> wrote:


Cierra:

We have entered into a legally binding agreement as to how I will be
compensated for my services with respect to representing you.  Since you
have rejected Google's settlement offer, there is nothing more for me to
consider or change at this time with respect to the Retention Agreement.
We should wait to see how the Company responds to your recent demand
of $850,000.

Paul Garrison

(510) <span style="color:red">REDACTED</span>

Sent from my iPhone

On May 8, 2021, at 2 57 PM, Cierra Gross
<c<span style="color:red">REDACTED</span> > wrote:


Hi. I believe I already signed it but are you going to add another addendum to reflect the changes of you accepting the fees as paid by Google and waving the difference?


-Cierra

This e-mail was sent from my cell phone. Please excuse any brevity.


On May 8, 2021, at 17 39, PAUL GARRISON
<<span style="color:red">REDACTED</span>         > wrote:


Cierra:

I need for you to return the Retention Agreement initialed and signed   Thanks

Paul Garrison
(510) <span style="color:red">REDACTED</span>

On 03/09/2021 11 21 AM PAUL GARRISON
<span style="color:red">REDACTED</span>
wrote:




Ms  Gross


It was a pleasure to meet you and to discuss your situation with your employer, Google   Further to our discussion, I have attached the Retention Agreement for your review, comment and signature.

Please contact me if you have
questions or concerns.


Paul Garrison

Law Offices of Paul Garrison

<span style="color:red">REDACTED</span>

Oakland, CA 94612

(510) <span style="color:red">REDACTED</span>

On 03/07/2021 5 52 PM
Cierra Gross
<span style="color:red">REDACTED</span>
wrote:



Hi


I would like to retain you
to represent me in a case.


-Cierra

Please excuse any
brevity

# EXHIBIT 5

From  Cierra Gross  <span style="color:red">REDACTED</span>
To: Paul Garrison <<span style="color:red">REDACTED</span>            net>
Date  05/09/2021 2 47 PM
Subject: Re: Representation


Hi Paul

When Google offered to pay your legal fees you said to me on the phone that you
would accept Google's payment as payment in full and waive any other fees as a, "gift
to me "

Is it my understanding that you now have no plans on following through with that
verbal agreement and as a result would want a third of any settlement offer agreed
upon?

 Cierra

This e-mail was sent from my cell phone. Please excuse any brevity.


On May 9, 2021, at 17:27, Paul Garrison REDACTED
wrote:


Cierra:

We have entered into a legally binding agreement as to how I will be
compensated for my services with respect to representing you.  Since you
have rejected Google's settlement offer, there is nothing more for me to
consider or change at this time with respect to the Retention Agreement.
We should wait to see how the Company responds to your recent demand
of $850,000.

Paul Garrison

(510) 384 6469

Sent from my iPhone

On May 8, 2021, at 2 57 PM, Cierra Gross
<span style="color:red">REDACTED</span>     > wrote:

Hi. I believe I already signed it but are you going to add
another addendum to reflect the changes of you accepting the
fees as paid by Google and waving the difference?

-Cierra

This e-mail was sent from my cell phone. Please
excuse any brevity.

On May 8, 2021, at 17 39, PAUL GARRISON
<span style="color:red">REDACTED</span>              wrote:

Cierra:

I need for you to return the Retention Agreement
initialed and signed   Thanks

Paul Garrison
(510) <span style="color:red">REDACTED</span>

On 03/09/2021 11 21 AM PAUL
GARRISON
<span style="color:red">REDACTED</span>
wrote:

Ms  Gross

It was a pleasure to meet you and to
discuss your situation with your
employer, Google   Further to our
discussion, I have attached the
Retention Agreement for your review,
comment and signature.

Please contact me if you have
questions or concerns.


Paul Garrison

Law Offices of Paul Garrison

## REDACTED

Oakland, CA 94612

(510) <span>REDACTED</span>

On 03/07/2021 5 52 PM
Cierra Gross

## REDACTED

wrote:



Hi


I would like to retain you
to represent me in a case.


-Cierra

Please excuse any
brevity

# EXHIBIT 6

From: Cierra Gross <REDACTED         >
To: Paul Garrison <REDACTED            >
Date: 05/09/2021 7:09 PM
Subject: Re: Representation

My lawyer will be in touch. Take care.

-Cierra

This e-mail was sent from my cell phone. Please excuse any brevity.


On May 9, 2021, at 22:02, Paul Garrison <REDACTED              > wrote:

Cierra:

What you stated below is inaccurate.  You are also mistaken on the law.  It was a verbal proposal based upon the Google offer that you rejected.  It was therefore no longer on the table.  Now the written settlement agreement is the only controlling document.  Google's attorney has already been informed of this written agreement.  However, if you would like to make that proposal to me now, I will consider it.

Paul Garrison
(510) REDACTED

On 05/09/2021 6:50 PM Cierra Gross <cREDACTED          > wrote:

Paul,

No problem. I will ask my attorney to include your $75k in lieu of a third that you verbally agreed to with me in the settlement agreement.

Your emails to me in this thread acknowledge there was in fact a verbal agreement that was different than our contract.

If you'd like to fight this too I'll have her add it to the list of things to do.


-Cierra

This e-mail was sent from my cell phone. Please excuse any brevity.

On May 9, 2021, at 21:22, Paul Garrison <REDACTED                        t> wrote:

Cierra:

Thanks for the notice.  In accordance with the Retention Agreement, any settlement proceeds that you receive from Google are subject to the lien provision of the agreement.  The effect of the provision permits me to be paid 1/3 of any settlement that you receive from Google in payment for my legal services up to this point.

Paul Garrison
(510) REDACTED

On 05/09/2021 4:24 PM Cierra Gross <cREDACTED               > wrote:

Paul,

I understand. Effective immediately I discharge you as my lawyer. I will send my new attorneys all relevant contact information.

Take care.

-Cierra

This e-mail was sent from my cell phone. Please excuse any brevity.

On May 9, 2021, at 19:18, Paul Garrison <REDACTED                    > wrote:

Cierra:

As I already explained below, you rejected Googles offer which my fees were a term of that offer. My statement was predicated upon your acceptance of the offer. Based upon your actions, that is no longer on the table.  The only option now is to what for Google's response to the $850K demand that you placed on the table without my knowledge or advice.  I hope that this further clarifies the matter.

Paul Garrison
(510) REDACTED

Sent from my iPhone

On May 9, 2021, at 3:33 PM, Cierra Gross <cREDACTED               > wrote:

Paul

I reread your email. It is my understanding that you have no intention of honoring your verbal agreement to me that you would accept Google's payment to you as payment in full in lieu of our signed agreement. Despite the fact that I agreed to the retainer addendum that you wanted to add to the contract.  Please confirm my understanding that you are refusing to honor our verbal agreement.

Our legally binding agreement also says I can discharge you at anytime. If my understanding is correct then you are invoking that clause of the contract because I will not sign any offer from Google without the updated addendum.

I look forward to your response.

Thank you

-Cierra

This e-mail was sent from my cell phone. Please excuse any brevity.

On May 9, 2021, at 17:47, Cierra Gross <REDACTED               > wrote:

Hi Paul

When Google offered to pay your legal fees you said to me on the phone that you would accept Google's payment as payment in full and waive any other fees as a, "gift to me."

Is it my understanding that you now have no plans on following through with that verbal agreement and as a result would want a third of any settlement offer agreed upon?

-Cierra

This e-mail was sent from my cell phone. Please excuse any brevity.

On May 9, 2021, at 17:27, Paul Garrison <REDACTED                 > wrote:

Cierra:

We have entered into a legally binding agreement as to how I will be compensated for my services with respect to representing you.  Since you have rejected Google's settlement offer, there is nothing more for me to consider or change at this time with respect to the Retention Agreement. We should wait to see how the Company responds to your recent demand of $850,000.

Paul Garrison
(510) REDACTED

Sent from my iPhone

On May 8, 2021, at 2:57 PM, Cierra Gross <REDACTED             > wrote:

Hi. I believe I already signed it but are you going to add another addendum to reflect the changes of you accepting the fees as paid by Google and waving the difference?

-Cierra

This e-mail was sent from my cell phone. Please excuse any brevity.

On May 8, 2021, at 17:39, PAUL GARRISON <pREDACTED                 > wrote:

Cierra:

I need for you to return the Retention Agreement initialed and signed.  Thanks.

Paul Garrison
(510) REDACTED

On 03/09/2021 11:21 AM PAUL GARRISON REDACTED              > wrote:

Ms. Gross:

It was a pleasure to meet you and to discuss your situation with your employer, Google.  Further to our discussion, I have attached the Retention Agreement for your review, comment and signature.

Please contact me if you have questions or concerns.

Paul Garrison

Law Offices of Paul Garrison

REDACTED

Oakland, CA 94612

(510) REDACTED

On 03/07/2021 5:52 PM Cierra Gross <REDACTED          > wrote:

Hi

I would like to retain you to represent me in a case.

-Cierra

Please excuse any brevity

# EXHIBIT 7

From: Cierra Gross REDACTED        com>
To: Paul Garrison <REDACTED          >
Date: 05/09/2021 7:09 PM
Subject: Re: Representation

My lawyer will be in touch. Take care.

-Cierra

This e-mail was sent from my cell phone. Please excuse any brevity.


On May 9, 2021, at 22:02, Paul Garrison REDACTED                    t> wrote:

Cierra:

What you stated below is inaccurate.  You are also mistaken on the law.  It was a verbal
proposal based upon the Google offer that you rejected.  It was therefore no longer on
the table.  Now the written settlement agreement is the only controlling document.
Google's attorney has already been informed of this written agreement.  However, if you
would like to make that proposal to me now, I will consider it.

Paul Garrison
(510) REDACTED


On 05/09/2021 6:50 PM Cierra Gross <REDACTED          > wrote:

Paul,

No problem. I will ask my attorney to include your $75k in lieu of a third that you verbally agreed to with me in the
settlement agreement.

Your emails to me in this thread acknowledge there was in fact a verbal agreement that was different than our
contract.

If you'd like to fight this too I'll have her add it to the list of things to do.


-Cierra

This e-mail was sent from my cell phone. Please excuse any brevity.

On May 9, 2021, at 21:22, Paul Garrison <REDACTED                    > wrote:

Cierra:

Thanks for the notice.  In accordance with the Retention Agreement, any settlement proceeds that you receive from Google are subject to the lien provision of the agreement.  The effect of the provision permits me to be paid 1/3 of any settlement that you receive from Google in payment for my legal services up to this point.

Paul Garrison
(510) REDACTED

On 05/09/2021 4:24 PM Cierra Gross <cREDACTED            > wrote:

Paul,

I understand. Effective immediately I discharge you as my lawyer. I will send my new attorneys all relevant contact information.

Take care.

-Cierra

This e-mail was sent from my cell phone. Please excuse any brevity.

On May 9, 2021, at 19:18, Paul Garrison <REDACTED                    > wrote:

Cierra:

As I already explained below, you rejected Googles offer which my fees were a term of that offer. My statement was predicated upon your acceptance of the offer. Based upon your actions, that is no longer on the table.  The only option now is to what for Google's response to the $850K demand that you placed on the table without my knowledge or advice.  I hope that this further clarifies the matter.

Paul Garrison
(510) REDACTED

Sent from my iPhone

On May 9, 2021, at 3:33 PM, Cierra Gross <REDACTED            > wrote:

Paul

I reread your email. It is my understanding that you have no intention of honoring your verbal agreement to me that you would accept Google's payment to you as payment in full in lieu of our signed agreement. Despite the fact that I agreed to the retainer addendum that you wanted to add to the contract.  Please confirm my understanding that you are refusing to honor our verbal agreement.

Our legally binding agreement also says I can discharge you at anytime. If my understanding is correct then you are invoking that clause of the contract because I will not sign any offer from Google without the updated addendum.

I look forward to your response.

Thank you

-Cierra

This e-mail was sent from my cell phone. Please excuse any brevity.

On May 9, 2021, at 17:47, Cierra Gross <REDACTED                > wrote:

Hi Paul

When Google offered to pay your legal fees you said to me on the phone that you would accept Google's payment as payment in full and waive any other fees as a, "gift to me."

Is it my understanding that you now have no plans on following through with that verbal agreement and as a result would want a third of any settlement offer agreed upon?

-Cierra

This e-mail was sent from my cell phone. Please excuse any brevity.

On May 9, 2021, at 17:27, Paul Garrison <REDACTED                > wrote:

Cierra:

We have entered into a legally binding agreement as to how I will be compensated for my services with respect to representing you.  Since you have rejected Google's settlement offer, there is nothing more for me to consider or change at this time with respect to the Retention Agreement. We should wait to see how the Company responds to your recent demand of $850,000.

Paul Garrison
(510) REDACTED

Sent from my iPhone

On May 8, 2021, at 2:57 PM, Cierra Gross REDACTED        com> wrote:

Hi. I believe I already signed it but are you going to add another addendum to reflect the changes of you accepting the fees as paid by Google and waving the difference?

-Cierra

This e-mail was sent from my cell phone. Please excuse any brevity.

On May 8, 2021, at 17:39, PAUL GARRISON <pREDACTED              > wrote:

Cierra:

I need for you to return the Retention Agreement initialed and signed.  Thanks.

Paul Garrison
(510) REDACTED

On 03/09/2021 11:21 AM PAUL GARRISON <REDACTED              > wrote:

Ms. Gross:

It was a pleasure to meet you and to discuss your situation with your employer, Google.  Further to our discussion, I have attached the Retention Agreement for your review, comment and signature.

Please contact me if you have questions or concerns.

Paul Garrison

Law Offices of Paul Garrison

REDACTED

Oakland, CA 94612

(510) REDACTED

On 03/07/2021 5:52 PM Cierra Gross <cREDACTED                > wrote:

Hi

I would like to retain you to represent me in a case.

-Cierra

Please excuse any brevity

# EXHIBIT 8

From: Cierra Gross <REDACTED          >
To: Paul Garrison <REDACTED              >
Date: 05/09/2021 7:09 PM
Subject: Re: Representation

My lawyer will be in touch. Take care.

-Cierra

This e-mail was sent from my cell phone. Please excuse any brevity.

On May 9, 2021, at 22:02, Paul Garrison REDACTED              > wrote:

Cierra:

What you stated below is inaccurate.  You are also mistaken on the law.  It was a verbal proposal based upon the Google offer that you rejected.  It was therefore no longer on the table.  Now the written settlement agreement is the only controlling document.  Google's attorney has already been informed of this written agreement.  However, if you would like to make that proposal to me now, I will consider it.

Paul Garrison
(510) REDACTED

On 05/09/2021 6:50 PM Cierra Gross <cREDACTED            > wrote:

Paul,

No problem. I will ask my attorney to include your $75k in lieu of a third that you verbally agreed to with me in the settlement agreement.

Your emails to me in this thread acknowledge there was in fact a verbal agreement that was different than our contract.

If you'd like to fight this too I'll have her add it to the list of things to do.


-Cierra

This e-mail was sent from my cell phone. Please excuse any brevity.

On May 9, 2021, at 21:22, Paul Garrison <REDACTED                    > wrote:

Cierra:

Thanks for the notice.  In accordance with the Retention Agreement, any settlement proceeds that you receive from Google are subject to the lien provision of the agreement.  The effect of the provision permits me to be paid 1/3 of any settlement that you receive from Google in payment for my legal services up to this point.

Paul Garrison
(510) REDACTED

On 05/09/2021 4:24 PM Cierra Gross <REDACTED                > wrote:

Paul,

I understand. Effective immediately I discharge you as my lawyer. I will send my new attorneys all relevant contact information.

Take care.

-Cierra

This e-mail was sent from my cell phone. Please excuse any brevity.


On May 9, 2021, at 19:18, Paul Garrison REDACTED                    > wrote:

Cierra:

As I already explained below, you rejected Googles offer which my fees were a term of that offer. My statement was predicated upon your acceptance of the offer. Based upon your actions, that is no longer on the table.  The only option now is to what for Google's response to the $850K demand that you placed on the table without my knowledge or advice.  I hope that this further clarifies the matter.

Paul Garrison
(510) REDACTED

Sent from my iPhone


On May 9, 2021, at 3:33 PM, Cierra Gross <REDACTED                > wrote:

Paul

I reread your email. It is my understanding that you have no intention of honoring your verbal agreement to me that you would accept Google's payment to you as payment in full in lieu of our signed agreement. Despite the fact that I agreed to the retainer addendum that you wanted to add to the contract.  Please confirm my understanding that you are refusing to honor our verbal agreement.

Our legally binding agreement also says I can discharge you at anytime. If my understanding is correct then you are invoking that clause of the contract because I will not sign any offer from Google without the updated addendum.

I look forward to your response.

Thank you

-Cierra

This e-mail was sent from my cell phone. Please excuse any brevity.

On May 9, 2021, at 17:47, Cierra Gross <REDACTED           > wrote:

Hi Paul

When Google offered to pay your legal fees you said to me on the phone that you would accept Google's payment as payment in full and waive any other fees as a, "gift to me."

Is it my understanding that you now have no plans on following through with that verbal agreement and as a result would want a third of any settlement offer agreed upon?

-Cierra

This e-mail was sent from my cell phone. Please excuse any brevity.

On May 9, 2021, at 17:27, Paul Garrison REDACTED                  > wrote:

Cierra:

We have entered into a legally binding agreement as to how I will be compensated for my services with respect to representing you.  Since you have rejected Google's settlement offer, there is nothing more for me to consider or change at this time with respect to the Retention Agreement. We should wait to see how the Company responds to your recent demand of $850,000.

Paul Garrison
(510)REDACTED

Sent from my iPhone

On May 8, 2021, at 2:57 PM, Cierra Gross <cREDACTED           > wrote:

Hi. I believe I already signed it but are you going to add another addendum to reflect the changes of you accepting the fees as paid by Google and waving the difference?

-Cierra

This e-mail was sent from my cell phone. Please excuse any brevity.

On May 8, 2021, at 17:39, PAUL GARRISON <REDACTED              > wrote:

Cierra:

I need for you to return the Retention Agreement initialed and signed.  Thanks.

Paul Garrison
(510)REDACTED

On 03/09/2021 11:21 AM PAUL GARRISON <cREDACTED             > wrote:

Ms. Gross:

It was a pleasure to meet you and to discuss your situation with your employer, Google.  Further to our discussion, I have attached the Retention Agreement for your review, comment and signature.

Please contact me if you have questions or concerns.

Paul Garrison

Law Offices of Paul Garrison

REDACTED

Oakland, CA 94612

(510)REDACTED

On 03/07/2021 5:52 PM Cierra Gross <cREDACTED          > wrote:

Hi

I would like to retain you to represent me in a case.

-Cierra

Please excuse any brevity

# EXHIBIT 9

From: Cierra Gross <REDACTED        >
To: Paul Garrison <REDACTED    >
Date: 05/09/2021 7:09 PM
Subject: Re: Representation

My lawyer will be in touch. Take care.

-Cierra

This e-mail was sent from my cell phone. Please excuse any brevity.


On May 9, 2021, at 22:02, Paul Garrison REDACTED                    wrote:

Cierra:

What you stated below is inaccurate.  You are also mistaken on the law.  It was a verbal
proposal based upon the Google offer that you rejected.  It was therefore no longer on
the table.  Now the written settlement agreement is the only controlling document.
Google's attorney has already been informed of this written agreement.  However, if you
would like to make that proposal to me now, I will consider it.

Paul Garrison
(510)REDACTED


On 05/09/2021 6:50 PM Cierra Gross <REDACTED          > wrote:

Paul,

No problem. I will ask my attorney to include your $75k in lieu of a third that you verbally agreed to with me in the
settlement agreement.

Your emails to me in this thread acknowledge there was in fact a verbal agreement that was different than our
contract.

If you'd like to fight this too I'll have her add it to the list of things to do.


-Cierra

This e-mail was sent from my cell phone. Please excuse any brevity.

On May 9, 2021, at 21:22, Paul Garrison <REDACTED                        > wrote:

Cierra:

Thanks for the notice.  In accordance with the Retention Agreement, any settlement proceeds that you receive from Google are subject to the lien provision of the agreement.  The effect of the provision permits me to be paid 1/3 of any settlement that you receive from Google in payment for my legal services up to this point.

Paul Garrison
(510) REDACTED

On 05/09/2021 4:24 PM Cierra Gross <REDACTED                  > wrote:

Paul,

I understand. Effective immediately I discharge you as my lawyer. I will send my new attorneys all relevant contact information.

Take care.

-Cierra

This e-mail was sent from my cell phone. Please excuse any brevity.

On May 9, 2021, at 19:18, Paul Garrison <REDACTED                        > wrote:

Cierra:

As I already explained below, you rejected Googles offer which my fees were a term of that offer. My statement was predicated upon your acceptance of the offer. Based upon your actions, that is no longer on the table.  The only option now is to what for Google's response to the $850K demand that you placed on the table without my knowledge or advice.  I hope that this further clarifies the matter.

Paul Garrison
(510)REDACTED

RED

Sent from my iPhone

On May 9, 2021, at 3:33 PM, Cierra Gross <REDACTED                > wrote:

Paul

I reread your email. It is my understanding that you have no intention of honoring your verbal agreement to me that you would accept Google's payment to you as payment in full in lieu of our signed agreement. Despite the fact that I agreed to the retainer addendum that you wanted to add to the contract.  Please confirm my understanding that you are refusing to honor our verbal agreement.

Our legally binding agreement also says I can discharge you at anytime. If my understanding is correct then you are invoking that clause of the contract because I will not sign any offer from Google without the updated addendum.

I look forward to your response.

Thank you

-Cierra

This e-mail was sent from my cell phone. Please excuse any brevity.

On May 9, 2021, at 17:47, Cierra Gross <REDACTED                > wrote:

Hi Paul

When Google offered to pay your legal fees you said to me on the phone that you would accept Google's payment as payment in full and waive any other fees as a, "gift to me."

Is it my understanding that you now have no plans on following through with that verbal agreement and as a result would want a third of any settlement offer agreed upon?

-Cierra

This e-mail was sent from my cell phone. Please excuse any brevity.

On May 9, 2021, at 17:27, Paul Garrison <REDACTED                > wrote:

Cierra:

We have entered into a legally binding agreement as to how I will be compensated for my services with respect to representing you.  Since you have rejected Google's settlement offer, there is nothing more for me to consider or change at this time with respect to the Retention Agreement. We should wait to see how the Company responds to your recent demand of $850,000.

Paul Garrison
(510) REDACTED

Sent from my iPhone

On May 8, 2021, at 2:57 PM, Cierra Gross REDACTED            > wrote:

Hi. I believe I already signed it but are you going to add another addendum to reflect the changes of you accepting the fees as paid by Google and waving the difference?

-Cierra

This e-mail was sent from my cell phone. Please excuse any brevity.

On May 8, 2021, at 17:39, PAUL GARRISON <REDACTED              > wrote:

Cierra:

I need for you to return the Retention Agreement initialed and signed.  Thanks.

Paul Garrison
(510) REDACTED

On 03/09/2021 11:21 AM PAUL GARRISON <REDACTED              > wrote:

Ms. Gross:

It was a pleasure to meet you and to discuss your situation with your employer, Google.  Further to our discussion, I have attached the Retention Agreement for your review, comment and signature.

Please contact me if you have questions or concerns.

Paul Garrison

Law Offices of Paul Garrison

REDACTED

Oakland, CA 94612

(510) REDACTED

On 03/07/2021 5:52 PM Cierra Gross <REDACTED                > wrote:

Hi

I would like to retain you to represent me in a case.

-Cierra

Please excuse any brevity

# EXHIBIT 10

From  Brian Johnsrud  REDACTED
To: PAUL GARRISON <REDACTED                    >
Date  05/09/2021 6 30 PM
Subject: Re: Cierra Gross


Hi Paul,

Thank you for letting me know   Who is her new counsel?

Brian


>   On May 9, 2021, at 6 25 PM, PAUL GARRISON
>   <REDACTED               > wrote:

>   Brian:

>   Effective immediately, I no longer represent Cierra Gross.  My
>   retention agreement with Ms  Gross is subject to a lien agreement
>   that requires Ms. Gross to pay me 1/3 of any proceeds that she
>   receives from Google   I will provide you with a copy of the
>   Agreement upon request.

>   Paul Garrison
>   Law Offices of Paul Garrison
>   REDACTED
>   Oakland, CA 94612
>   (510) REDACTED

# EXHIBIT 11

From  Brian Johnsrud  REDACTED  com
To: PAUL GARRISON <p REDACTED >
Date  05/09/2021 6 30 PM
Subject: Re: Cierra Gross

Hi Paul,

Thank you for letting me know   Who is her new counsel?

Brian

> On May 9, 2021, at 6 25 PM, PAUL GARRISON REDACTED > wrote:

Brian:

Effective immediately, I no longer represent Cierra Gross.  My
retention agreement with Ms  Gross is subject to a lien agreement
that requires Ms. Gross to pay me 1/3 of any proceeds that she
receives from Google   I will provide you with a copy of the
Agreement upon request.

Paul Garrison
Law Offices of Paul Garrison
REDACTED
Oakland, CA 94612
(510) REDACTED

# EXHIBIT 12

From: Cierra Gross REDACTED            >
To: Paul Garrison REDACTED
Date: 05/09/2021 7:09 PM
Subject: Re: Representation

My lawyer will be in touch. Take care.

-Cierra

This e-mail was sent from my cell phone. Please excuse any brevity.


On May 9, 2021, at 22:02, Paul Garrison <REDACTED                > wrote:

Cierra:

What you stated below is inaccurate.  You are also mistaken on the law.  It was a verbal
proposal based upon the Google offer that you rejected.  It was therefore no longer on
the table.  Now the written settlement agreement is the only controlling document.
Google's attorney has already been informed of this written agreement.  However, if you
would like to make that proposal to me now, I will consider it.

Paul Garrison
(510) REDACTED


On 05/09/2021 6:50 PM Cierra Gross <REDACTED               > wrote:

Paul,

No problem. I will ask my attorney to include your $75k in lieu of a third that you verbally agreed to with me in the
settlement agreement.

Your emails to me in this thread acknowledge there was in fact a verbal agreement that was different than our
contract.

If you'd like to fight this too I'll have her add it to the list of things to do.


-Cierra

This e-mail was sent from my cell phone. Please excuse any brevity.

On May 9, 2021, at 21:22, Paul Garrison <REDACTED                    net> wrote:

Cierra:

Thanks for the notice.  In accordance with the Retention Agreement, any settlement proceeds that you receive from Google are subject to the lien provision of the agreement.  The effect of the provision permits me to be paid 1/3 of any settlement that you receive from Google in payment for my legal services up to this point.

Paul Garrison
(510) REDACTED

On 05/09/2021 4:24 PM Cierra Gross <REDACTED             > wrote:

Paul,

I understand. Effective immediately I discharge you as my lawyer. I will send my new attorneys all relevant contact information.

Take care.

-Cierra

This e-mail was sent from my cell phone. Please excuse any brevity.

On May 9, 2021, at 19:18, Paul Garrison <REDACTED                     > wrote:

Cierra:

As I already explained below, you rejected Googles offer which my fees were a term of that offer. My statement was predicated upon your acceptance of the offer. Based upon your actions, that is no longer on the table.  The only option now is to what for Google's response to the $850K demand that you placed on the table without my knowledge or advice.  I hope that this further clarifies the matter.

Paul Garrison
(510) REDACTED

Sent from my iPhone

On May 9, 2021, at 3:33 PM, Cierra Gross <cREDACTED             > wrote:

Paul

I reread your email. It is my understanding that you have no intention of honoring your verbal agreement to me that you would accept Google's payment to you as payment in full in lieu of our signed agreement. Despite the fact that I agreed to the retainer addendum that you wanted to add to the contract.  Please confirm my understanding that you are refusing to honor our verbal agreement.

Our legally binding agreement also says I can discharge you at anytime. If my understanding is correct then you are invoking that clause of the contract because I will not sign any offer from Google without the updated addendum.

I look forward to your response.

Thank you

-Cierra

This e-mail was sent from my cell phone. Please excuse any brevity.

On May 9, 2021, at 17:47, Cierra Gross <REDACTED > wrote:

Hi Paul

When Google offered to pay your legal fees you said to me on the phone that you would accept Google's payment as payment in full and waive any other fees as a, "gift to me."

Is it my understanding that you now have no plans on following through with that verbal agreement and as a result would want a third of any settlement offer agreed upon?

-Cierra

This e-mail was sent from my cell phone. Please excuse any brevity.

On May 9, 2021, at 17:27, Paul Garrison <REDACTED > wrote:

Cierra:

We have entered into a legally binding agreement as to how I will be compensated for my services with respect to representing you.  Since you have rejected Google's settlement offer, there is nothing more for me to consider or change at this time with respect to the Retention Agreement. We should wait to see how the Company responds to your recent demand of $850,000.

Paul Garrison
(510)REDACTED

Sent from my iPhone

On May 8, 2021, at 2:57 PM, Cierra Gross <REDACTED > wrote:

Hi. I believe I already signed it but are you going to add another addendum to reflect the changes of you accepting the fees as paid by Google and waving the difference?

-Cierra

This e-mail was sent from my cell phone. Please excuse any brevity.

On May 8, 2021, at 17:39, PAUL GARRISON REDACTED > wrote:

Cierra:

I need for you to return the Retention Agreement initialed and signed.  Thanks.

Paul Garrison
(510) REDACTED

On 03/09/2021 11:21 AM PAUL GARRISON REDACTED > wrote:

Ms. Gross:

It was a pleasure to meet you and to discuss your situation with your employer, Google.  Further to our discussion, I have attached the Retention Agreement for your review, comment and signature.

Please contact me if you have questions or concerns.

Paul Garrison

Law Offices of Paul Garrison

REDACTED

Oakland, CA 94612

(510) REDACTED

On 03/07/2021 5:52 PM Cierra Gross <REDACTED                > wrote:

Hi

I would like to retain you to represent me in a case.

-Cierra

Please excuse any brevity

# EXHIBIT 13

From: Cierra Gross <H REDACTED        >
To  PAUL GARRISON   REDACTED
Date: 05/13/2021 11:51 AM
Subject  Fwd  RE  New representation


Hi Paul,


In response to your email to Brian that a counter offer was made and therefore our agreement that you would accept $75k in lieu of the third lapsed, see below.

I don't need a response as you will need to discuss who gets what with my new attorney upon settlement, if one is reached

Take care

Sent from ProtonMail for iOS


---------- Forwarded message ----------
From  Brian Johnsrud  REDACTED
Date: On Wed, May 12, 2021 at 17:12
Subject  Fwd  RE  New representation
To: 'Cierra Gross' <REDACTED        >
Cc

Hi Cierra,


That's not correct. Google made its last offer to Paul on Thursday, May 6, subject to the attached draft terms and

conditions.

I told Paul that, if we received a counteroffer from you, Google would consider a further offer in good faith.

So let us wait to receive your good-faith counter before we respond further.

Best regards,

Brian

Brian Lee Johnsrud

**Curley, Hurtgen & Johnsrud LLP**
Counselors at Law

REDACTED

Menlo Park, CA 94025

(d) 650.REDACTED

(c) 650 REDACTED

REDACTED    com

www.chjllp.com

---

**From:** Cierra Gross <REDACTED          >
**Sent:** Wednesday, May 12, 2021 2:03 PM
**To:** Brian Johnsrud <REDACTED          >
**Subject:** RE: New representation

Hi

Paul indicated that you had new offer that you would send Monday. Can you send me that new offer   Thank you

Sent from ProtonMail for iOS

On Sun, May 9, 2021 at 23 09, Brian Johnsrud  REDACTED wrote:

> Hi Cierra,
>
> Thank you for your email.  Paul Garrison also informed me earlier today that he is no longer representing you.
>
> I will wait to hear from your new counsel.
>
> Best regards,
>
> Brian
>
> Brian Lee Johnsrud
>
> **Curley, Hurtgen & Johnsrud LLP**
> Counselors at Law
>
> REDACTED
>
> Menlo Park, CA 94025
>
> (d) 650.REDACTED
>
> (c) 650 REDACTED

REDACTED       .com

[www.chjllp.com](http://www.chjllp.com)

---

**From:** Cierra Gross <HREDACTED            >
**Sent:** Sunday, May 9, 2021 8:07 PM
**To:** Brian Johnsrud <REDACTED            >
**Subject:** New representation

Hi Brian

This is notice that effective immediately I am no longer being
represented by Paul Garrison. My new attorneys will be in
touch soon. Please do not further communication with Paul
Garrison regarding this matter at all.

Thank you

Cierra Gross

# EXHIBIT 14

From: Cierra Gross <REDACTED                >
To  PAUL GARRISON   REDACTED
Date: 05/13/2021 11:51 AM
Subject  Fwd  RE  New representation

Hi Paul,

In response to your email to Brian that a counter offer was made and therefore our
agreement that you would accept $75k in lieu of the third lapsed, see below.

I don't need a response as you will need to discuss who gets what with my new attorney
upon settlement, if one is reached

Take care

Sent from ProtonMail for iOS

---------- Forwarded message ----------
From  Brian Johnsrud  REDACTED
Date: On Wed, May 12, 2021 at 17:12
Subject  Fwd  RE  New representation
To: 'Cierra Gross' <HREDACTED                >
Cc

Hi Cierra,

That's not correct. Google made its last offer to Paul on
Thursday, May 6, subject to the attached draft terms and

conditions.

I told Paul that, if we received a counteroffer from you, Google would consider a further offer in good faith.

So let us wait to receive your good-faith counter before we respond further.

Best regards,

Brian


Brian Lee Johnsrud

**Curley, Hurtgen & Johnsrud LLP**
Counselors at Law

REDACTED

Menlo Park, CA 94025

(d) 650.<sup>REDACTED</sup>

(c) 650 <sup>REDACTED</sup>

REDACTED       om

www.chjllp.com

---

**From:** Cierra Gross <REDACTED          >
**Sent:** Wednesday, May 12, 2021 2:03 PM
**To:** Brian Johnsrud <BREDACTED        >
**Subject:** RE: New representation


Hi

Paul indicated that you had new offer that you would send Monday. Can
you send me that new offer   Thank you

Sent from ProtonMail for iOS

On Sun, May 9, 2021 at 23 09, Brian Johnsrud  REDACTED
wrote:

> Hi Cierra,
>
> Thank you for your email.  Paul Garrison also
> informed me earlier today that he is no longer
> representing you.
>
> I will wait to hear from your new counsel.
>
> Best regards,
>
> Brian
>
> Brian Lee Johnsrud
>
> **Curley, Hurtgen & Johnsrud LLP**
> Counselors at Law
>
> REDACTED
>
> Menlo Park, CA 94025
>
> (d) 650.REDACTED
>
> (c) 650 REDACTED

h   REDACTED   .com

[www.chjllp.com](www.chjllp.com)

---

**From:** Cierra Gross <REDACTED com>
**Sent:** Sunday, May 9, 2021 8:07 PM
**To:** Brian Johnsrud <BREDACTED >
**Subject:** New representation

Hi Brian

This is notice that effective immediately I am no longer being
represented by Paul Garrison. My new attorneys will be in
touch soon. Please do not further communication with Paul
Garrison regarding this matter at all.

Thank you

Cierra Gross

# EXHIBIT 15

---------- Original Message ----------
From 'PAUL GARRISON' REDACTED
To: Brian Johnsrud <REDACTED >
Date 06/09/2021 4 18 PM
Subject: RE: Cierra Gross


Brian

In addition to my earlier reply to your email today, you should know that I have requested Ms. Gross through her new counsel to resolve the matter by making a proposal regarding the fee dispute in order to resolve the matter now several times during the last few weeks  I have not received any proposals.

Paul Garrison
(510) REDACTED

On 06/09/2021 10:07 AM Brian Johnsrud <bREDACTED > wrote:

Paul,


As you may know, we have a tentative resolution in the Cierra Gross matter, which of course is subject to a written agreement being worked out and signed.  To settle the case, we need your written confirmation that Google may pay 1/3 of the total settlement proceeds as attorney's fees to Cierra's current counsel, **which they agree to hold in their trust account pending resolution of your asserted lien**.  This is a common way to resolve this type of issue so that a client like Cierra is not aggrieved by reason of any dispute over an attorney's fee lien.  In short, it enables Google to sign the written agreement and pay the settlement amount while you and Cierra's new firm work to resolve the lien.


Please let me know if you are okay with this.  Many thanks.


Brian

Brian Lee Johnsrud

**Curley, Hurtgen & Johnsrud LLP**
Counselors at Law

<span style="color:red">**REDACTED**</span>

Menlo Park, CA 94025

(d) 650.<span style="color:red">**REDACTED**</span>

(c) 650 <span style="color:red">**REDACTED**</span>

<span style="color:red">**REDACTED**</span>     com

www.chjllp.com

---

**From:** PAUL GARRISON  <span style="color:red">REDACTED</span>
**Sent:** Sunday, May 9, 2021 6:26 PM
**To:** Brian Johnsrud  <span style="color:red">REDACTED</span>
**Subject:** Cierra Gross


Brian:


Effective immediately, I no longer represent Cierra Gross.  My retention agreement with Ms  Gross is subject to a lien agreement that requires Ms Gross to pay me 1/3 of any proceeds that she receives from Google.  I will provide you with a copy of the Agreement upon request


Paul Garrison

Law Offices of Paul Garrison

<span style="color:red">**REDACTED**</span>

Oakland, CA 94612

(510) <span style="color:red">REDACTED</span>

EXHIBIT 16

2/11/22, 8:53 PM                         Fwd: Re: Ms. Cierra Gross - Revised Settlement Demand Parties Agree about Google Outen's Escrow Account

Case 3:22-cv-01426-JSC   Document 7-1   Filed 03/14/22   Page 69 of 109

From  "Washington, Melissa"  <span style="color:red">REDACTED</span>
To: Brian Johnsrud <B<span style="color:red">REDACTED</span>>, PAUL GARRISON <<span style="color:red">REDACTED</span>          >
Cc  "Swartz, Justin M "  <span style="color:red">REDACTED</span>
Date: 06/11/2021 8:27 AM
Subject  Re  Ms  Cierra Gross   Revised Settlement Demand


Thanks Brian. Understood. We are perfectly capable of holding the amount in escrow. You and I will discuss today

Thanks Paul for confirming the amount of the lien  We will be in touch shortly separately



**Melissa Washington | Partner**

<span style="color:red">REDACTED</span>                              | Washington, DC 20001
T 202 <span style="color:red">REDACTED</span> | F 646 5<span style="color:red">REDACTED</span>
<span style="color:red">REDACTED</span>                    m | Bio

   


This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.


*Please consider the environment before printing this e-mail.*

---

**From:** Brian Johnsrud <<span style="color:red">REDACTED</span>          >
**Sent:** Friday, June 11, 2021 11:22:45 AM
**To:** PAUL GARRISON
**Cc:** Swartz, Justin M.; Washington, Melissa
**Subject:** Re: Ms. Cierra Gross - Revised Settlement Demand


Google is NOT handling this lien or holding the amount in a protected account. We are not getting in the middle of this.  Outten & Golden can hold the money in trust. The draft agreement is with them.

On Jun 11, 2021, at 8 18 AM, PAUL GARRISON wrote:

All:

In order to avoid prejudice to Ms. Cierra Gross, I agree to permit Google to place 1/3 of the $500K against which the Law Offices of Paul Garrison holds a lien in that amount for attorney's fees for representing Ms. Gross into a protected account until the fee dispute can be resolved   All other funds can be distributed consistent with the terms of the agreement between Google and Ms. Gross' counsel  After the fee dispute is resolved, documented in writing and executed by both parties, Google will accordingly disburse the 1/3 amount that was previously withheld

While this represents a small modification from the original proposal, it is a better one in that it allows a neutral party in the fee dispute, here Google who already possesses the funds, to hold the monies until the fee dispute is resolved.  However, it is in effect the same.

In order to resolve the fee dispute now in the best interest of Ms. Gross, I again invite Ms  Gross' counsel to make a reasonable proposal in writing and I will give it serious consideration although I maintain that LOPG is legally entitled to the full amount stated above

Paul Garrison
Law Offices of Paul Garrison
REDACTED
Oakland, CA 94612
(510)REDACTED

---------- Original Message ----------
From  Brian Johnsrud  REDACTED
To: PAUL GARRISON <REDACTED            >
Date  05/06/2021 1 48 PM
Subject: Re: Ms. Cierra Gross - Revised Settlement Demand

Paul

We can go with the July 7 separation date and our final offer is $500K, as per the attached draft agreement. Please let me know your thoughts.  Thank you

Brian Johnsrud
Curley, Hurtgen & Johnsrud LLP

2/11/22, 8:53 PM
Case 3:22-cv-01426-JSC - Document 7-1 Filed 03/14/22 Page 71 of 109
Fwd: Re: Nelda C. Gross - Revised Settlement Demand Parties Agree about Interpleader into United Escrow Account

Sent from my iPhone

On May 3, 2021, at 11 41 PM, PAUL GARRISON
<REDACTED                    > wrote:


Brian:

Below is Ms. Gross' revised settlement demand:

- 3 years of salary and benefit continuation (or paid COBRA);
- 3 years of bonus payments;
- transfer of 90 unvested shares or cash equivalent on July 7, 2021;
- 93% of cash shall not be subject to tax withholding due to emotional distress; and
- attorney's fees to be paid by the Company.

Ms  Gross will remain on authorized medical leave until 5/24/21.  Ms. Gross will subsequently take all of her earned but unused vacation from 5/25/21 until 7/7/21  Ms. Gross' last date of employment with Google will be 7/8/21   She will not return to work

In consideration of the above, Ms  Gross will execute a settlement agreement with a general release of all claims related to her employment and the following terms mutual confidentiality clause, mutual non-disparagement clause, tax indemnification provision regarding the nontaxable event described above and other reasonable and customary clauses

Please advise

Paul Garrison
Law Offices of Paul Garrison
REDACTED
Oakland, CA 94612
(510) REDACTED

<Google_C. Gross - Draft Settlement Agreement.docx>

# EXHIBIT 17

From "Washington, Melissa" <span style="color:red">REDACTED</span>
To: PAUL GARRISON <<span style="color:red">REDACTED</span> net>, "Swartz, Justin M."
 jms@outtengolden com
Date: 06/11/2021 5:04 AM
Subject RE RE Cierra Gross

Thanks Paul. There is no executed agreement. In order to finalize the agreement, Brian is waiting for your written confirmation that you are seeking a lien for "1/3rd of the $500,000" as you stated during our phone call. He needs written confirmation of that lien to insert into the agreement so that that amount can be held in escrow pending resolution of the lien During our phone call, you stated that you are asserting a lien for "1/3rd of the $500,000" and are seeking fees "up to the amount that was on the table and nothing additional " Once you confirm that with Brian in writing, he will insert it into the agreement and the parties will finalize and send the final executed agreement to you.



**Melissa Washington | Partner**

<span style="color:red">REDACTED</span>        | Washington, DC 20001
T <span style="color:red">REDACTED</span> | F 646 <span style="color:red">REDACTED</span>
m<span style="color:red">REDACTED</span>      | Bio

   

This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

*Please consider the environment before printing this e-mail.*

**From:** PAUL GARRISON <span style="color:red">REDACTED</span>
**Sent:** Friday, June 11, 2021 2:24 AM
**To:** Swartz, Justin M <span style="color:red">REDACTED</span>

**Cc:** Washington, Melissa  mpierrelouis@outtengolden com
**Subject:** Fwd: RE: Cierra Gross


FYI.

          Original Message

From: 'PAUL GARRISON' <REDACTED                    >

To  Brian Johnsrud   REDACTED      com

Date: 06/09/2021 4:15 PM

Subject  RE  Cierra Gross



Brian:


While I am not opposed to your proposed conceptually, I will need to obtain a
copy of the full and complete Settlement Agreement that must also include an
attorney's fee provision that states what you are proposing below. I cannot
make an immediate decision without first reviewing the complete document with
my legal and professional advisors.


Thanks.


Paul Garrison

Law Offices of Paul Garrison

REDACTED

Oakland, CA 94612

(510) REDACTED

          On 06/09/2021 10 07 AM Brian Johnsrud  REDACTED           wrote



Paul,

As you may know, we have a tentative resolution in the Cierra Gross matter, which of course is subject to a written agreement being worked out and signed. To settle the case, we need your written confirmation that Google may pay 1/3 of the total settlement proceeds as attorney's fees to Cierra's current counsel, <u>which they agree to hold in their trust account pending resolution of your asserted lien</u>. This is a common way to resolve this type of issue so that a client like Cierra is not aggrieved by reason of any dispute over an attorney's fee lien. In short, it enables Google to sign the written agreement and pay the settlement amount while you and Cierra's new firm work to resolve the lien.

Please let me know if you are okay with this. Many thanks.

Brian

Brian Lee Johnsrud

**Curley, Hurtgen & Johnsrud LLP**
Counselors at Law

REDACTED

Menlo Park, CA 94025

(d) 650.REDACTED

(c) 650 REDACTED

REDACTED        .com

www.chjllp.com

---

**From:** PAUL GARRISON   pREDACTED
**Sent:** Sunday, May 9, 2021 6:26 PM
**To:** Brian Johnsrud <REDACTED    com>
**Subject:** Cierra Gross

Brian:

Effective immediately, I no longer represent Cierra Gross.  My retention agreement with Ms. Gross is subject to a lien agreement that requires Ms. Gross to pay me 1/3 of any proceeds that she receives from Google.  I will provide you with a copy of the Agreement upon request.


Paul Garrison

Law Offices of Paul Garrison

REDACTED

Oakland, CA 94612

(510) REDACTED

# EXHIBIT 18

Case 3:22-cv-01426-JSC   Document 1   Filed 03/14/22   Page 78 of 109

From  "Washington, Melissa"  REDACTED
To: PAUL GARRISON <p REDACTED                >, "Swartz, Justin M."
REDACTED
Cc: "Manuel, Ashley" < REDACTED                >
Date  06/14/2021 5 04 PM
Subject: RE: Gross/Google: Escrow agreement and release of claims.pdf


Paul,


The agreement used virtually the same language from my email to you  There were no
changes other than the whereas clause. The agreement is that our firm holds the amount
in escrow and that you release Google, Google's counsel, Ms  Gross and our firm from
any claims made in connection with the lien. The purpose of me emailing the language
in advance was so that you would be aware of the exact language in the agreement
Since you are not executing the agreement, any further discussion and the execution of
the settlement agreement has to wait until I return from PTO later this month


Melissa




**Meli    a Wa  hington | Partner**

601 Ma    achu ett  Ave NW, Suite 200W | Wa  hington, DC 20001

T 202 REDACTED | F 646 REDACTED

REDACTED        .com | Bio

   

This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

*Please consider the environment before printing this e-mail.*

**From:** PAUL GARRISON  REDACTED
**Sent:** Monday, June 14, 2021 7:01 PM
**To:** Washington, Melissa  REDACTED                ; Swartz, Justin M
<REDACTED        >
**Cc:** Manuel, Ashley  REDACTED
**Subject:** Fwd: Gross/Google: Escrow agreement and release of claims.pdf

Ms. Washington and Mr. Swarz:

The attached agreement does not comport with our understanding in that it includes a release provision that was never discussed   I therefore cannot sign the attached agreement in its current iteration.

Please revised in accordance with our agreement.  Thanks.

Paul Garrison

(510) REDACTED

---------- Original Message ----------

From  Ashley Manuel via DocuSign  REDACTED

To: Paul Garrison REDACTED        >

Date  06/14/2021 9 59 AM

Subject: Gross/Google: Escrow agreement and release of claims.pdf



Ashley Manuel sent you a document to review and sign.

## REVIEW DOCUMENT

**Ashley Manuel**

<span style="color:red">REDACTED</span>            .com

Good afternoon, Mr  Garri  on

Enclo  ed plea  e find the E  crow Agreement and Relea  e of Claims for your signature.

Best,

Ashley Manuel

Powered by **DocuSign**

**Do Not Share This Email**

This email contains a secure link to DocuSign. Please do not share this
email, link, or access code with others.

**Alternate Signing Method**
Visit DocuSign.com, click 'Access Documents', and enter the security
code:
8CB1F0F6FC6640E19B0104FA92B1B5272

**About DocuSign**
Sign documents electronically in just minutes. It's safe, secure, and
legally binding. Whether you're in an office, at home, on-the-go -- or even
across the globe -- DocuSign provides a professional trusted solution for
Digital Transaction Management™.

**Questions about the Document?**
If you need to modify the document or have questions about the details in
the document, please reach out to the sender by emailing them directly.

**Stop receiving this email**
Report this email or read more about Declining to sign and Managing
notifications.

If you are having trouble signing the document, please visit the Help with
Signing page on our Support Center.

 Download the DocuSign App

This message was sent to you by Ashley Manuel who is using the DocuSign Electronic Signature
Service. If you would rather not receive email from this sender you may contact the sender with
your request.

# EXHIBIT 19

2/11/22, 3:56 PM
Case 3:22-cv-01426-JSC Document 7-1 Filed 03/14/22 Page 83 of 109
RE: Gross/Google: Escrow agreement and release of claims.pdf

From  "Washington, Melissa"  REDACTED
To: Paul Garrison <REDACTED                    >
Cc  "Swartz, Justin M "REDACTED                , "Manuel, Ashley"
<REDACTED                >
Date  06/14/2021 5 35 PM
Subject: RE: Gross/Google: Escrow agreement and release of claims.pdf


That's fine  Except that I'm not in the office tomorrow so if it is not executed tonight, it
has to wait until I get back. Ashley has modified paragraph 5 to only state Google and
its counsel  If you execute tonight, we will finalize the settlement agreement with
Google tonight. Otherwise, it has to wait until I return to the office. You will receive it
via docusign and email in 10 minutes


---

**From:** Paul Garrison <REDACTED                    >
**Sent:** Monday, June 14, 2021 8:25 PM
**To:** Washington, Melissa <REDACTED                    com>
**Cc:** Swartz, Justin M. <REDACTED              >; Manuel, Ashley
<REDACTED            com>
**Subject:** Re: Gross/Google: Escrow agreement and release of claims.pdf


Melissa:


I never agreed to release any party. I do not agree to release Outten or Ms Gross.
Google is the only party where the release is appropriate since it is not a party to the
attorney/client agreement or a party's legal representative. Send the revised agreement
accordingly. Thanks.

2/11/22, 3:56 PM
Case 3:22-cv-01426-JSC Document 7-1 Filed 03/14/22 Page 84 of 109
Fwd: RE: Gross/Google / Escrow Agreement and release Agreement

Paul Garrison

(510) <span style="color:red">REDACTED</span>

Sent from my iPhone

On Jun 14, 2021, at 2 04 PM, Washington, Melissa
<<span style="color:red">REDACTED</span>> wrote:

Paul,

The agreement used virtually the same language from my email to you.
There were no changes other than the whereas clause  The agreement is
that our firm holds the amount in escrow and that you release Google,
Google's counsel, Ms  Gross and our firm from any claims made in
connection with the lien. The purpose of me emailing the language in
advance was so that you would be aware of the exact language in the
agreement. Since you are not executing the agreement, any further
discussion and the execution of the settlement agreement has to wait until I
return from PTO later this month.

Melissa



**Meli   a Wa  hington** | **Partner**

<span style="color:red">REDACTED</span> | Wa  hington, DC 20001

T 202<span style="color:red">REDACTED</span> | F 646<span style="color:red">REDACTED</span>

<span style="color:red">REDACTED</span>     [com](#) | [Bio](#)

   

This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

*Please consider the environment before printing this e-mail.*

**From:** PAUL GARRISON REDACTED
**Sent:** Monday, June 14, 2021 7:01 PM
**To:** Washington, Melissa  <u>m</u>REDACTED            ; Swartz, Justin M. <REDACTED
**Cc:** Manuel, Ashley REDACTED
**Subject:** Fwd: Gross/Google: Escrow agreement and release of claims.pdf


Ms. Washington and Mr. Swarz:


The attached agreement does not comport with our understanding in that it includes a release provision that was never discussed   I therefore cannot sign the attached agreement in its current iteration.


Please revised in accordance with our agreement   Thanks


Paul Garrison

(510) REDACTED

                Original Message

        From: Ashley Manuel via DocuSign <REDACTED        >

        To  Paul Garrison   REDACTED

        Date: 06/14/2021 9:59 AM

        Subject  Gross/Google  Escrow agreement and release of claims.pdf



Ashley Manuel sent you a document to
review and sign.

**<u>REVIEW DOCUMENT</u>**

**Ashley Manuel**

<span style="color:red">REDACTED</span>          .com

Good afternoon, Mr. Garrison.

Enclosed please find the Escrow Agreement and
Release of Claims for your signature.

Best,

Ashley Manuel

Powered by **DocuSign**

**Do Not Share This Email**

This email contains a secure link to DocuSign. Please do not share this email, link, or access code with others.

**Alternate Signing Method**
Visit DocuSign.com, click 'Access Documents', and enter the security code:
8CB1F0F6FC6640E19B0104FA92B1B5272

**About DocuSign**
Sign documents electronically in just minutes. It's safe, secure, and legally binding. Whether you're in an office, at home, on-the-go -- or even across the globe -- DocuSign provides a professional trusted solution for Digital Transaction Management™.

**Questions about the Document?**
If you need to modify the document or have questions about the details in the document, please reach out to the sender by emailing them directly.

**Stop receiving this email**
Report this email or read more about Declining to sign and Managing notifications.

If you are having trouble signing the document, please visit the Help with Signing page on our Support Center.

 Download the DocuSign App

This message was sent to you by Ashley Manuel who is using the DocuSign Electronic Signature Service. If you would rather not receive email from this sender you may contact the sender with your request.

# EXHIBIT 20

**OUTTEN & GOLDEN**LLP

Advocates for Workplace Fairness

July 6, 2021

Via Email to REDACTED
Mr. Paul Garrison

**Re: *Cierra Gross/Google***

Dear Mr. Garrison:

As we informed you, Cierra Gross settled her matter with Google for $700,000. We write to attempt to resolve the dispute regarding your claim for attorneys' fees.

Per the recent escrow agreement between you, Ms. Gross, and this firm (Exhibit A), we will segregate $165,000 from Ms. Gross' settlement proceeds and hold this amount in our escrow account pursuant to the lien you purport to have asserted. As we have stated, however, Ms. Gross does not concede that you are entitled to any fee.

We have your letter of June 7 and disagree with most of your assertions, characterizations, and legal analysis. Rather than refute them point by point, however we summarize our client's position below.

First, because Ms. Gross discharged you before her case concluded, any fee to which you are entitled is based on *quantum meruit*, which courts uniformly hold to be measured by your hourly rates and the time you spent on the matter — in other words, your lodestar amount.[1] We have asked you several times to reveal your lodestar amount and time records but you have not done so. In fact, you have stated that you did not keep any records of the time you spend on Ms. Gross' matter. Although your retainer agreement with Ms. Gross (Exhibit B) requires you to

---

[1]  *See Fracasse v. Brent*, 6 Cal.3d 784 (1972); *Spires v. Am. Bus Lines*, 158 Cal. App. 3d 211, 216 (Ct. App. 1984) ("an attorney employed under a contingent fee contract and discharged prior to the occurrence of the contingency is limited to *quantum meruit* recovery for the reasonable value of services rendered up to the time of discharge, rather than the full amount of the agreed contingent fee"); *Mardirossian & Assocs., Inc. v. Ersoff*, 153 Cal. App. 4th 257, 272 (2007) ("'[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate'"); *Grant & Eisenhofer, P.A. v. Brown*, No. CV175968PSGPJWX, 2018 WL 3816723, at *5 (C.D. Cal. July 24, 2018) (noting that there is a "strong presumption" that the lodestar amountis the reasonable fee).

New York  685 Third Avenue  25th Floor  New York, NY 10017  Tel (212) 245 1000  Fax (646) 509 2060

SeREDACT
ED

www.outtengolden.com

Mr. Paul Garrison
July 6, 2021
Page 2 of 3

provide her with "a billing statements at the end of the matter whether or not a settlement is obtained for Client," you have not done so.[2]

Given the short period during which you represented Ms. Gross, the lack of substantial written work product (less than 10 pages, as far as we can see), and Ms. Gross' records of phone and e-mail communications with you, we believe that it is unlikely that you spent more than 16 hours on her matter, estimating generously. At your claimed hourly rate of $450 per hour, this would entitle you to a fee of $7,200. Subtracting the $2,500 "non-refundable retention fee" that Ms. Gross paid, that leaves $4,700.

However, because you failed to keep any time records related to your representation of Ms. Gross, we and Ms. Gross do not concede that you are not entitled to a fee from her at all. Courts have discretion to deny attorneys' fee requests where the lawyer seeking a fee cannot produce contemporaneous time records.[3] If this matter is litigated, we and Ms. Gross will take this position.

Your retainer agreement with Ms. Gross does not change the outcome. First, your retainer agreement does not trump the settled principle that a discharged lawyer is entitled to a quantum meruit fee based on lodestar.[4]

In addition, your retainer agreement, which is unclear and internally inconsistent (and which you drafted), does not support your argument. Paragraph 4 of the agreement provides that "should *attorney obtain* a settlement or severance package on Client's behalf," (emphasis added) the attorney is entitled to one-third of any lump sum payment that the client receives. Under this provision, therefore, you are not entitled to a portion of her settlement because you did not "obtain a settlement or severance package on her behalf." She did not settle her claim until after she discharged you.

Finally, your conduct during your representation of Ms. Gross and after it concluded, disqualifies you from obtaining a fee.[5] Ms. Gross has documented and discussed with you your shortcomings with respect to her engagement, which are substantial.

Your misconduct after Ms. Gross terminated you is just as serious. Critically, notwithstanding that you no longer represented Ms. Gross, you continued to communicate with opposing counsel regarding Ms. Gross' negotiations. You suggested a settlement amount to the other side without her authorization and made sure to protect your claimed fee in the process. This self-dealing violated your fiduciary duty to Ms. Gross and applicable rules. It also

---

[2] Presumably, this refers to a statement detailing your hours and rate (which you claim to be $450 per hour) because it applies even if you do not obtain a settlement for the client.

[3] *ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1020 (2001) (citing *Hensley v. Eckherhart*, 461 U.S. 424 (1983)).

[4] *Fracasse v. Brent*, 6 Cal.3d 784 (1972); *see also Mardirossian & Assocs., Inc. v. Ersoff*, 153 Cal. App. 4th 257, 272 (2007).

[5] *Pringle v. La Chapelle*, 73 Cal.App.4th 1000 (1999) (An egregious violation of State Bar ethics rules or violation of law can preclude an attorney from recovering quantum meruit fees).

Mr. Paul Garrison
July 6, 2021
Page 3 of 3

harmed Ms. Gross' negotiating position and led to a lower settlement than she could have
obtained otherwise.

You also refused to provide us with information that would have been helpful to us in
negotiating on Ms. Gross' behalf. On May 27, we asked you to provide us with certain
information, including:

-       "All written communications with opposing counsel regarding Ms. Gross' matter,
whether by email or otherwise (we will pay reasonable copying charges);
-       "All notes regarding such communications and regarding your communications
with Ms. Gross;"
-       "A timeline of all monetary demands and offers to resolve Ms. Gross' matter."

Your failure to provide this information hindered us in our negotiations with the other side.

You also asserted a lien for much more than the fee to which you could ultimately be
entitled. This also breached your fiduciary duty to Ms. Gross[6], and hindered our efforts to
finalize the settlement.

                              *       *       *

Despite that a court would likely award you a fee of less than $5,000, if it awarded you a
fee at all, Ms. Gross will make a one-time offer of $30,000 to resolve this dispute. If you do not
accept this offer on or before July 12, 2021, it will be deemed to be withdrawn and we will
assume that you would prefer to litigate.

If you would like to discuss any of this, please contact me. We will expect to hear from
you soon.

                              Sincerely,
                              REDACTED

                              Justin Swartz

---

[6] *In re Feldsott,* 3 Cal. State Bar Ct. Rptr. 754, 757 (Rev. Dep't 1997) (The discharged attorney
"continue[s] to owe [the client] a fiduciary duty of utmost good faith and fair dealing with
respect to, at least, the subject matter of [the attorney's] prior representation of [the client],
including [the attorney's] express lien for his attorney's fees."); *Cazares v. Saenz*, 208 Cal. App.
3d 279, 289 (1989)("As a matter of professional responsibility, California lawyers are entitled to
charge clients no more than a reasonable fee for legal services."); CAL. RULES OF PROF'L
CONDUCT R. 4-200.

# Exhibit A

DocuSign Envelope ID: FF5B9749-F6A3-41DE-80D3-C746BAC36731

# OUTTEN & GOLDEN LLP

## Escrow Agreement and Waiver & Release of Claims

Outten & Golden LLP, Ms. Cierra Gross, and Mr. Paul Garrison agree as follows:

1. Whereas, Cierra Gross and Google have reached a final settlement ("Settlement") with respect to her discrimination claims against Google.

2. Whereas, Mr. Garrison has asserted an attorney's fees lien in the amount of $165,000 with respect to the Settlement.

3. Outten & Golden LLP agrees to keep $165,000 in escrow (1/3rd of $500,000) in satisfaction of Mr. Garrison's attorney's fee lien until the fee dispute between the parties is resolved;

4. Mr. Garrison agrees that this amount is adequate to resolve his asserted lien; and,

5. In exchange, Mr. Garrison agrees not to sue Google or its counsel Curley, Hurtgen & Johnsrud LLP, with respect to such lien.

**REDACTED**

By: _____
Outten & Golden, LLP

Dated: June 25 , 2021

**REDACTED**

By: _____
Cierra Gross

Dated: June 25 , 2021

**REDACTED**

By: _____
Paul Garrison

Dated: June 7 , 2021

# Exhibit B

## Attorney-Client Fee Agreement

The Law Offices of Paul Garrison ("Attorney") and Ms. Cierra Gross ("Client") both voluntarily and knowingly enter into this Attorney-Client Fee Agreement.  Client agrees that Attorney will provide the following legal services below.

1. **Conditions**:  Client agrees that Attorney will not start performing legal services on her behalf unless and until the Client signs and returns this Agreement and pays the retention fee specified in paragraph 4.  In this case, Attorney will not charge Client on a contingent basis.

2. **Scope of Services**:  Attorney will provide legal services as follows: 1) LEGAL CONSULTATION; 2) REVIEW EMPLOYMENT DOCUMENTS; 3) PROVIDE LEGAL ANALYSIS; 4) NEGOTIATE SETTLEMENT TERMS WITH HER FORMER EMPLOYER; AND 5) PREPARE AND/OR REVIEW SETTLEMENT AGREEMENT.  Attorney will provide legal services reasonably required to represent Client.  Attorney will keep Client informed and to respond to all questions, inquiries or concerns related to this case.  Client recognizes that the philosophy of Attorney's law firm is dispute resolution and not litigation.  If Client wishes to litigate, Attorney and Client will discuss the situation before an action is filed.  Under no circumstances is Attorney obligated to file a lawsuit on Client's behalf.  Attorney may make referrals upon request by Client.

3. **Client Obligations:**  Client duties, at all times during this representation, shall be to be truthful with Attorney, cooperate with Attorney, keep Attorney informed, comply with the terms of this Agreement, pay bills on time, keep Attorney advised of change in address, telephone number and Client's whereabouts, provide necessary information and documents and to appear at legal proceedings and meetings related to assisting Attorney in fulfilling her obligations under this Agreement.

4. **Deposit**:  Client agrees the work Attorney performs on behalf of Client in this matter is on a contingency fee basis.  Client acknowledges that the retention deposit in the amount of $2,500.00 for Attorney's start up fees and costs is waived.  However, should Attorney obtain a settlement or severance package on Client's behalf with Client's employer, Client shall pay Attorney one-third of any lump sum payment that Client receives from her employer as stated in paragraph 5 below.  Client shall receive a billing statement at the end of the matter.

5. **Legal Fees and Billing Practices**:  Client agrees to pay Attorney on a contingency fee basis.  The initial deposit is waived as stated in paragraph 4.  Client understands and agrees to pay Attorney one-third (1/3) of the monetary settlement (excluding the value of fringe and retirement benefits and promotional wage increases).  Although the parties agree to a contingency fee arrangement, for Client's knowledge only, Attorney's regular fee rate is **$450.00** per hour.

6. **Costs and Charges:** Client recognizes that Attorney will incur costs and expenses. For example, such costs and expenses include, but are not limited to, service of process charges, filing fees, court reporter and deposition fees, jury fees, notary, telephone, postage, mileage, transportation, hotel and meals, investigation expenses, consultant fees, expert fees, professional, mediator, arbitrator, and Special Master fees. Attorney will not be responsible for such costs and expenses which shall be the sole responsibility of Client.

7. **Billing Statements:** Attorney will provide Client with a billing statements at the end of the matter whether or not a settlement is obtained for Client.

8. **Lien:** Client grants Attorney a lien on all claims and causes of action that are subject of this representation under this Agreement. The lien will be for any services performed by Attorney at the conclusion of services performed. The lien will attach to any recovery Client may obtain whether by arbitration, court judgment, verdict, settlement or in any other manner. The effect of such a lien is that Attorney may be able to compel payment of fees and costs from any recovery obtained by Attorney by virtue of her efforts on Client's behalf even if Attorney is discharged before the end of the case. Because a lien may affect Client's property rights, Client may consult with an independent lawyer regarding the lien before executing this agreement. By initialing this paragraph, Client agrees that Client has had a reasonable opportunity to consult with an independent attorney regardless of whether Client has exercised the right to consult with such an attorney and that Client grants Attorney such a lien.  ⟋X⟍ (Client initials here) ⟋X⟍ (Attorney initials here)

9. **Discharge and Withdrawal:** Client may discharge Attorney at any time. Attorney may withdraw with Client's consent or for good cause. Good cause includes Client's breach of this Agreement, refusal to cooperate or to follow Attorney's direction or advice on a material matter or any fact or circumstance that would render Attorney's representation in this matter unethical or unlawful. When Attorney's services conclude, all outstanding charges are immediately due and payable. After services have been concluded, Attorney will, upon Client's request, deliver Client's files and possessions to Client unless it is subject to the lien provision in this Agreement, whether or not Client has paid for all services.

10. **Disclaimers:** Nothing in this Agreement shall be construed as a promise or guarantee about an outcome in Client's case. Attorney makes no promises or guarantees. Attorney's comments about the outcome of the case are opinions only. Similarly, Attorney's statements about fees and costs are estimates only and may vary from actual fees and costs.

11. **Entire Agreement:** This Agreement shall be the entire agreement between Attorney and Client and no other representations, agreement, statements, promises made on or before the effective date of this Agreement shall be binding upon the Parties.

12. **Severability:** If any provision or portion of this Agreement shall be determined to be legally void and unenforceable by a court or arbitrator of competent jurisdiction, the remaining provisions of this Agreement shall remain valid and enforceable.

2

# EXHIBIT 21

From: "Sullivan, John" <jREDACTED        >
To  PAUL GARRISON   REDACTED
Cc: Jennifer Becker <REDACTED        >
Date  08/08/2021 5 33 PM
Subject: FW: Garrison/Gross


Paul,


See below  I am out of the office most of this week but can make time for a telephone
call if you let me know some days and times that would work for you.


John


John B. Sullivan, Partner

415 REDACTED

LONG & LEVIT LLP

REDACTED                , San Francisco, CA 94104

Main: 415-REDACTED   Fax: 415-REDACTED

Email ⋮ Website ⋮ Résumé

**From:** Swartz, Justin M. <REDACTED>
**Sent:** Friday, August 6, 2021 6:44 AM
**To:** Sullivan, John <REDACTED>
**Cc:** Jennifer Becker <REDACTED>; Washington, Melissa <REDACTED>
**Subject:** Re: Garrison/Gross


John –

Thanks for our call the other day. I appreciated the approach you took and understand the points you made. However, we and our client continue to believe that your client is not entitled to a fee at all, given the circumstances and his conduct. Therefore, we reject your client's $140,000 demand. In response, we will increase our offer to $33,000. This is more than he would be awarded in litigation and without paying a lawyer to litigate for him. We urge him to accept it.

Please feel free to call me if you want to discuss further.

Best regards,

Justin


---

**From:** "Sullivan, John" <REDACTED>
**Date:** Wednesday, July 28, 2021 at 10:42 AM
**To:** Justin Swartz <REDACTED>
**Cc:** Jennifer Becker <REDACTED> Melissa Pierre-Louis <REDACTED>
**Subject:** RE: Garrison/Gross


Confirmed.


John B. Sullivan, Partner

415 REDACTED

LONG & LEVIT LLP

REDACTED                    San Francisco, CA 94104

Main: 415-REDACTED    Fax: 415-REDACTED

Email   Web ite   Ré umé

---

**From:** Swartz, Justin M. REDACTED          >
**Sent:** Wednesday, July 28, 2021 7:33 AM
**To:** Sullivan, John <REDACTED          >
**Cc:** Jennifer Becker <REDACTED          >; Washington, Melissa
<REDACTED          com>
**Subject:** Re: Garrison/Gross

3pm ET / Noon PT works.  I'll be at 646-REDACTED.

---

**From:** "Sullivan, John" <REDACTED          >
**Date:** Wednesday, July 28, 2021 at 10:20 AM
**To:** Justin Swartz <REDACTED    com>
**Cc:** Jennifer Becker <REDACTED          >, Melissa Pierre-Louis
<REDACTED          >
**Subject:** RE: Garrison/Gross

Justin,

I am free most of Monday so let me know a time that works for you.

John

John B. Sullivan, Partner

415-REDACTED

REDACTED          , San Francisco, CA 94104

Main  415 REDACTED   Fax  415 REDACTED

Email ⋮ Website ⋮ Résumé

**From:** Swartz, Justin M. REDACTED              >
**Sent:** Wednesday, July 28, 2021 6:45 AM
**To:** Sullivan, John <REDACTED         >
**Cc:** Jennifer Becker <REDACTED        >; Washington, Melissa
<REDACTED          com>
**Subject:** Re: Garrison/Gross

John -
Thanks for your email.  I am out the rest of this week.  Is there a time on Monday that works?

Justin

age removed by sender. Outten & Golden LLP

**Justin M. Swartz** | **Partner**

REDACTED         | New York, NY 10017

T 212-REDACTED| F 646REDACTED

REDACTED         | Bio

age removed by sender. Facebook    age removed by sender. Twitter
age removed by sender. Linkedin    age removed by sender. Blog

This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

*Please consider the environment before printing this e-mail.*

**From:** "Sullivan, John" <REDACTED >
**Date:** Tuesday, July 27, 2021 at 5:25 PM
**To:** Justin Swartz <REDACTED  com>
**Cc:** Jennifer Becker <REDACTED >
**Subject:** Garrison/Gross

Justin,

We have retained by Paul Garrison to assist in resolving a fee dispute between him and
Cierra Gross.  Do you have a few minutes to discuss the matter this week?

John

John B. Sullivan, Partner

415-REDACTED

REDACTED , San Francisco, CA 94104

Main: 415-REDACTED   Fax: 415-REDACTED

Email ⋮ Website ⋮ Résumé

# EXHIBIT 22

From: PAUL GARRISON <REDACTED                    >
To: "Outten, Wayne" <REDACTED          com>
Cc: "REDACTED                " <REDACTED              >, "Swartz, Justin M."
<REDACTED              >, "Washington, Melissa" <REDACTED              >
Date: 09/07/2021 3:34 PM
Subject: RE: Cierra Gross Fee Dispute - CONFIDENTIAL FOR THE PURPOSES OF
SETTLEMENT ONLY


Mr. Outten:

Thanks for your prompt reply despite your busy schedule.  From the outset, I have only
sought an outcome that is fair and reasonable  In that same regard, I look forward to
hearing soon from Justin about the firm's proposal because I have not experienced that so
far in this case

Paul Garrison
Law Offices of Paul Garrison
REDACTED
Oakland, CA 94612
(510) REDACTED

        On 09/07/2021 1:34 PM Outten, Wayne <REDACTED              > wrote:


        Mr  Garrison,


        As I am sure you will understand, I am not familiar with this matter at all


        You are correct in noting that my firm and I value integrity   I believe that our firm's
        reputation for doing the "right thing" is well-deserved.

In that regard, I am confident that Justin and Melissa will be fair in their handling of this matter – which may or may not conform to what you think is fair. I hope that the matter can be resolved amicably for everyone.


Justin asked me to let you know that you will hear back from him soon


Meanwhile, I expect that Justin will keep me in the loop


Sincerely,


Wayne Outten




**Wayne N. Outten | Chair**

<span style="color:red">REDACTED</span>                | New York, NY 10017
T 212  <span style="color:red">REDACTED</span>  | F 646  <span style="color:red">REDACTED</span>
<span style="color:red">REDACTED</span>                | Bio

   


This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.


*Please consider the environment before printing this e-mail.*

**From:** PAUL GARRISON  <span style="color:red">REDACTED</span>
**Sent:** Tuesday, September 7, 2021 2:46 PM
**To:** Outten, Wayne  <span style="color:red">REDACTED</span>
**Cc:** <span style="color:red">REDACTED</span>  com; Swartz, Justin M. <J<span style="color:red">REDACTED</span>>;
Washington, Melissa  <span style="color:red">REDACTED</span>
**Subject:** RE: Cierra Gross Fee Dispute - CONFIDENTIAL FOR THE PURPOSES OF SETTLEMENT ONLY

Case: 3:22-cv-01426-JSC · Document 1-7 · Filed 03/14/22 · Page 106 of 109 G Appeal to Outten…

Mr. Outten:

I am writing to appeal to you for assistance.  I am a solo practitioner based in Oakland, CA   My practice is devoted to ADR services and to assisting individuals in fighting employment discrimination by negotiating settlements pre trial   I often fight big employers and obtain satisfactory results for my clients that are reasonable for both parties.

Recently, I did just that with respect to an African American female, Cierra Gross, regarding her concerns of racial harassment with her former employer, Google.  On the eve of settlement with a hefty offer pre-trial on the table, Ms. Gross terminated me and hired your firm   Your firm lawyers, Justin Swartz and Melissa Washington, subsequently represented her.  While they improved Ms. Gross' position, they did so by less than half of the amount ($200,000) that I had negotiated ($500,000) for her pre-litigation.

It is my understanding and belief that Ms. Gross has already been paid and the remaining amount represents attorney's fees, approximately $170,000, is being held by your firm in a client trust fund account.  Despite my appeals to settle this dispute multiple times, Mr  Swartz and Ms  Washington have tried multiple times to bully me to accept a nominal amount that was not only substantially less than what I was entitled to receive in the written attorney client contingency fee agreement with Ms. Gross, but also well below the amount that both Ms. Washington and Ms  Gross attempted to get me to accept  $70,000 00  In order to try to settle the matter in good faith, I reduced my attorney's fee entitlement that I earned to $140,000 00   Outten has only tendered a pittance of $33,000.00 in response after initially proposing that I settle the fee dispute for $70,000 00   still well below what I have earned  Subsequently, Mr  Swartz and Ms. Washington have been completely silent and that is why I am reaching out to you now

Not only am I entitled to the attorneys' fees that I earned, but I also want to settle the fee dispute because we are ostensibly on the same side of the law - helping employees and not fighting each other   I believe that the actions of your attorneys belie the key values of your firm - integrity.  From your firm's website and its reputation, I have concluded that your firm's mission and practice is not based upon taking earned attorney's fees from solo practitioners.  Accordingly, I would like to resolve this matter amicably soon   I am hoping that your intervention will  help us achieve this objective.

I look forward to hearing from you. Thank you.

2/25/22, 1:19 PM

Case: 3:22-cv-01426-JSC - DOCUMENTAL FOR THE PURPOSE OF A CASE - Document 7-1 Filed 03/14/22 Page 107 of 109 G Appeal to Outten…

https://mail.aol.com/webmail-std/en-us/PrintMessage

Paul Garrison

Law Offices of Paul Garrison

<span style="color:red">REDACTED</span>

Oakland, CA 94612

(510) <span style="color:red">REDACTED</span>

# EXHIBIT 23

--------- Original Message ----------
From: Paul Garrison <pREDACTED                >
To: Cierra Gross <REDACTED              >
Cc: Paul Garrison <REDACTED              >
Date: 05/06/2021 9:04 AM
Subject: Re: Unavailable until Wednesday


Cierra:

Enjoy your time away.

As we discussed, things change as the parties progress in settlement negotiations. I had hoped to get more for you, but Google has repeatedly stated that they do not see your case in the 7-figure range based on the facts of your case, your level and time with the Company. I never made you a guarantee. I will continue to fight for you and I will send you updates that you can review at your convenience.

Paul Garrison
(510) REDACTED

Sent from my iPhone


On May 6, 2021, at 8:49 AM, Cierra Gross <REDACTED                > wrote:

Hi Paul,

Just wanted to touch base before I go out. I'm out for a week starting tomorrow to reduce stress. Whatever offer they come back with today, I decline. Continue to negotiate in my absence and get as close to the 1.2 million that you expressed you thought was reasonable.  If you continue at the same pace by the time I return you all should have passed 5 or so offers back and forth. I'm about to enter into a meeting with "Ray Ray and them" so I'm unavailable today.  I will not be responding to texts,calls, or emails while I'm out. I will reach out to you next Wednesday upon my return. I look forward to discussing the progress made in my absence.

Thanks so much!

Cierra


Sent from ProtonMail for iOS